**ALMEIDA LAW GROUP**
Victor J. Sandoval (Cal. Bar #344461)
3415 S. Sepulveda Blvd, Suite 1121
Los Angeles, CA 90034
T: (562) 534-5907
E: victor@almeidalawgroup.com

[additional counsel listed below]

*Attorneys for Plaintiff and the Proposed Classes*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ZACHARY BOSTICK, individually and on behalf of himself and all others similarly situated,

> *Plaintiff*,

v.

INTUIT, INC. d/b/a TURBOTAX, INTUIT TT OFFERINGS, INC., CK PROGRESS, INC. d/b/a CREDIT KARMA LLC, MVB BANK, INC., FIRST CENTURY BANK, N.A. SANTA BARBARA TAX PRODUCTS GROUP, LLC, and GREEN DOT BANK,

> *Defendants*.

Case No.: **'26CV1444 H    VET**

**CLASS ACTION**

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR VIOLATIONS OF:**

**(1) THE MILITARY LENDING ACT, 10 U.S.C. § 987, *et seq*. – ACCOUNT ACCESS**

**(2) THE MILITARY LENDING ACT, 10 U.S.C. § 987, *et seq*. – EXCESSIVE FEES**

**(3) THE MILITARY LENDING ACT, 10 U.S.C. §987, *et seq*. – UNLAWFUL WAIVER**

**JURY TRIAL DEMANDED**

-1-

Plaintiff Zachary Bostick, a dependent spouse of a member of the United States Navy ("Plaintiff"), and a California citizen, on behalf of himself and all others similarly situated, alleges the following based upon personal knowledge as to himself and upon information and belief and the investigation of his counsel as to all other matters, and brings this Class Action Complaint against Intuit Inc. d/b/a TurboTax, Intuit TT Offerings, Inc., CK Progress Inc. d/b/a Credit Karma, MVB Bank, Inc., First Century Bank, N.A., Santa Barbara Tax Products Group, LLC, and Green Dot Bank, (collectively "Intuit" and/or "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.      This Complaint seeks to protect active-duty military service members and their families from Defendants' unlawful lending practices which violate the Military Lending Act, 10 U.S.C. § 987, *et seq*. ("MLA").

2.      The MLA was enacted to protect United States active-duty service members and their dependents (collectively, "Covered Members") from predatory or unlawful lending practices. Such practices endanger our nation's military readiness and are detrimental to service member retention, morale, household stability, security clearances, and career advancement.

3.      Intuit, Inc. is the nation's largest provider of online tax return preparation and electronic filing services through its TurboTax platform. TurboTax markets and facilitates short-term refund-based consumer loans known as "Refund Advance" loans, allowing taxpayers to receive a portion of their anticipated federal refund shortly after filing, often the same day.

4.      These loans are repaid by a covered borrower's expected refund when the tax refund is received.

5.      Refund Advance loans are issued by partner banks, including MVB Bank or First Century Bank, N.A., but are facilitated through Intuit subsidiaries, including Intuit TT Offerings Inc. and Intuit Financing Inc.

6.      Defendants' Refund Advance product is inseparable from a web of required ancillary financial accounts that generate revenue despite Defendants' marketing of the loan itself as "no-fee" and "0% APR."

7.      Consumers who use the Refund Advance product must open and maintain a Credit Karma Money Spend checking account in order to apply for and receive loan proceeds.

8.      The loan agreement expressly provides that WebBank will not process a Refund Advance application unless the consumer has first been approved for a Credit Karma Money Spend account.

9.      While Defendants represent the Refund Advance Loan carries no interest or loan fees, repayment is structured through temporary deposit accounts—a "Refund Account"—over which Defendants and their banking partner exercise exclusive control.

10.     Although Defendants represent that Refund Advance loans carry no interest or loan fees, the required Credit Karma Money Spend account imposes transaction-based fees, including ATM withdrawal charges, which are incurred incident to the extension of credit and must be included in the Military Annual Percentage Rate ("MAPR").

11.     The required account structure enables Defendants to extract value through mandatory banking products and associated fees that reduce the consumer's tax refund. These costs are not incidental; they are integral to the Refund Advance Loan program and disproportionately impact service members and/or their spouses or dependents living paycheck to paycheck, rendering the product far more expensive than Defendants' marketing suggests.

12.     Thus, although Defendants advertise the Refund Advance Loan as a "0% APR" loan, the product's structure and required ancillary services cause the MAPR to far exceed the MLA's 36% cap for Covered Borrowers, including active-duty service members and their dependents.

13. The MLA prohibits creditors from extending consumer credit to covered borrowers at a MAPR greater than 36%, calculated to include not only interest, but also fees and charges imposed directly or indirectly as a condition of the extension of credit. *See* 10 U.S.C. § 987, *et seq*.

14. Critically, the MAPR expressly includes: application fees, participation fees, fees for ancillary products required to obtain credit, and fees imposed in connection with a transaction for consumer credit.

15. Thus, Defendants' reliance on a nominal "0% APR" is legally irrelevant if the economic cost of credit, properly calculated, exceeds the MLA's statutory ceiling.

16. In addition, consumers are required to agree to mandatory arbitration provisions and class action waivers contained both in the Refund Advance loan agreement and the Credit Karma Money Spend account agreement.

17. The MLA expressly prohibits creditors from requiring Covered Borrowers to submit to arbitration or waive their rights to seek relief in court as a condition of consumer credit. 10 U.S.C. § 987(e).

18. Plaintiff, a dependent spouse of member of the United States Navy, has used Defendants' tax services and, at relevant times, has obtained a Refund Advance Loan.

19. By virtue of the unlawful arbitration agreement within each loan's relevant terms, as well as fees charged, Defendants extended consumer credit to Plaintiff on numerous occasions in violation of the MLA.

20. As tax refund advance loans have become more popular, the parallels to payday lending are striking.

21. In violation of the MLA, Defendants' products charge an MAPR well in excess of the MLA's legal limit.

22. Defendants' loans violate the MLA in at least six ways: by (1) charging interest above the 36% statutory MAPR cap; (2) failing to provide credit disclosures required by the MLA; (3) including purported class action ban and jury trial waiver; (4)

including a mandatory binding arbitration clause; (5) including unreasonable notice requirements imposed on borrowers as a condition for legal action, and (6) using a method of access to a deposit, savings, or other financial account maintained by the borrower as security for the obligation. 10 U.S.C. §§ 987(b), (c) & (e)(1), (2), (4), (5), (6).

23.    Among the abusive lending practices that the MLA was designed to curb was predatory loans made to service members.[1]

24.    In a Department of Defense ("DoD") report on lending practices affecting military members (the "Report"), the egregious lending practices prevalent in the lending industry were highlighted.[2]

25.    The Report noted that lenders were "heavily concentrated around military bases," with statistics showing that communities with military installations "rank among the most heavily targeted communities in their respective states."[3]

26.    Military populations were targeted for an obvious reason: "active-duty military personnel are three times more likely than civilians to have taken out a payday loan," with such loans "costing service members over $80 million in abusive fees annually as of 2005."[4]

27.    Defendants' business practices violate the MLA and are part of a systematic nationwide policy and practice.

28.    Plaintiff seeks to hold Defendants accountable for their actions and prevent their predatory lending practices from continuing.

---

[1] Report on Predatory Lending Practices Directed at Members of the Armed Forces and Their Dependents, U.S. DEP'T OF DEFENSE (Aug. 9, 2006), available at https://apps.dtic.mil/sti/pdfs/ADA521462.pdf.

[2] *Id.* at 10–16.

[3] *Id.* at 10–11.

[4] *Id.* at 11.

**THE PARTIES**

29.    Plaintiff, a dependent spouse of a member of the United States Navy, is an individual over 18 years of age. At all relevant times, Plaintiff was a natural person resident of San Diego, California. During the class period, Plaintiff was a Covered Member as that term is defined by the MLA.

30.    Defendant Intuit, Inc. d/b/a TurboTax, is a California corporation with its headquarters at 2700 Coast Ave, Mountain View, California 94043.

31.    Defendant Intuit Inc. is a California corporation that is registered to do business in the State of California. Defendant Intuit Inc.'s principal place of business is in California, and this Defendant may be served at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

32.    Defendant Intuit, Inc. has offered loan agreements to consumers, including Covered Members, during the relevant time period.

33.    Defendants Intuit Financial and Intuit TT Offerings, Inc., are subsidiaries of Intuit, Inc. California corporation with their headquarters at 2700 Coast Ave, Mountain View, California 94043.

34.    Defendant Intuit TT Offerings Inc. serves as the transmitter of electronically filed tax returns through TurboTax. Intuit TT Offerings Inc. is identified as a transmitter and information-sharing entity in the refund processing and loan-related agreements.

35.    Defendant CK Progress Inc. d/b/a Credit Karma is the program partner through which the Credit Karma Money Spend Account is offered and is headquartered at 1100 Broadway, Oakland, California 94607.

36.    Defendant MVB Bank, Inc. ("MVB") provides the Credit Karma Money Spend checking account that borrowers must open as a condition of obtaining a Refund Advance Loan. MVB Bank is headquartered at 301 Virginia Avenue, Fairmont, West Virginia, 26554.

37.     Defendant First Century Bank, N.A. ("FCB") is the originating lender that underwrites and disburses Refund Advance Loans. FCB is headquartered at 1731 N Elm St, Commerce, GA 30529.

38.     Defendant Santa Barbara Tax Products Group, LLC, ("SBTPG") a division of Green Dot Corporation operates the Refund Processing Service and establishes the temporary Green Dot Deposit Account through which refunds are received and deductions are taken. Green Dot is headquartered at 114 W 7th St, Suite 240, Austin, TX 78701.

39.     Defendants have acted in concert and are jointly and severally liable for their concerted and collective violations of the MLA.

## JURISDICTION AND VENUE

40.     This Court has jurisdiction over Defendants, because they, at all times relevant herein, regularly conducted business in the State of California, including providing tax preparation services in California and making loans or servicing loans to service members in California.

41.     Venue is proper in this District because Defendants coordinated business operations in California, did business in California and in this District, and committed the wrongful lending practices alleged herein in this District. Additionally, Plaintiff interacted with Defendants' products in San Diego County, and was forced to agree to arbitration, in violation of the MLA, while physically located in San Diego County.

## LEGAL BACKGROUND

### The MLA was Designed to Protect Covered Members Just Like Plaintiff and the Class

42.     The Department of Defense's Report on lending practices discussed the payday lending industry at length.[5] The Report noted that payday lenders were "heavily concentrated around military bases," with statistics showing that communities with

---

[5] Report, *supra* n.1.

-7-

military installations "rank among the most heavily targeted communities in their respective states."[6]

43.    Military populations were targeted for an obvious reason: "active-duty military personnel are three times more likely than civilians to have taken out a payday loan," with such loans costing service members millions in abusive fees.[7] Moreover, the military payment architecture, and the Uniform Code of Military Justice to which service members are bound, make them particularly vulnerable to predatory payday loans:

> Check-holding, a central feature of payday loans, is particularly risky for military borrowers. Every payday loan involves a prospective "bad" check. Military borrowers are required to maintain bank accounts in order to receive direct deposit of military pay and are subject to the Uniform Code of Military Justice that penalizes deliberately writing a check not covered by funds on deposit. Borrowers become trapped in repeat borrowing or renewals of loans in order to keep the check used to obtain the loan from bouncing, a key reason that payday loans are debt traps.[8]

44.    While the precise tax refund advance product offering was developed somewhat recently, its genre of high interest loans is not new. In 2006, the DoD noted military "borrowers encounter[ed] a booming virtual market of small loan offers, payday loans, and 'military loans' via the Internet."[9] Those loans, like Defendants' loans, "are delivered and collected online through electronic fund transfer."[10]

---

[6] *Id.* at 10–11.

[7] Id. at 11.

[8] *Id.* at 14. To be sure, Refund Advance Loan providers like Defendants do not collect physical checks from their customers at loan initiation but instead takes a virtual check by requiring Covered Members to authorize automatic debits from their tax refunds to repay their loans.

[9] *Id.* at 15.

[10] *Id.* at 16.

45.    The Report noted key similarities between the various predatory lending products that accurately encapsulate Defendants' business model:

(1) Predatory lenders seek out young and financially inexperienced borrowers who have bank accounts and steady jobs, but also have little in savings, flawed credit or have hit their credit limit. These borrowers are less likely to weigh the predatory loan against other opportunities and are less likely to be concerned about the consequences of taking the loan.

(2) Predatory lenders make loans based on access to assets (through checks, bank accounts, car titles, tax refunds, etc.) and guaranteed continued income, but not on the ability of the borrower to repay the loan without experiencing further financial problems.[11]

(3) … Increasingly the Internet is used to promote loans to service members.

(4) Predatory products feature high fees/interest rates, with some requiring balloon payments, while others pack excessive charges into the product. The result of their efforts is to obfuscate the comparative cost of their product with other options available to the borrower.

. . .

(6) Predatory lenders attempt to work outside of established usury limits, either by attempting to obtain exemptions from federal and state statutes or by developing schemes designed to circumvent existing laws.[12]

46.    The Report further found "high interest loans, whether provided as a payday loan, military installment loan, or as a result of unscrupulous automobile

---

[11] To that end, lenders' "use of checks, access to bank accounts, [and similar other methods of extracting repayment] pressure the borrow to consider loan payments as being their top priority." *Id*. at 44.

[12] *Id*. at 21- 22

financing can leave a service member with enormous debt, family problems, difficulty maintaining personal readiness and a tarnished career."[13] As if being trapped in a debt cycle is not bad enough, some service member victims of payday and other lenders experienced disciplinary action (ranging from reprimands to "loss of promotions and separation from the military") as a result of their financial hardship.[14]

47.    Drawing from the bountiful evidence of service member abuse at the hands of predatory lenders, the DoD concluded it could not "prevent predatory lending without assistance from Congress, the state legislatures, and federal and state enforcement agencies."[15]

48.    To curb usurious interest rates, excessive annual percentage rates ("APRs"), and bogus fees, the DoD requested legislation that would prevent lenders from preying on service members and endangering the nation's military readiness.[16]

49.    The American Bar Association and others expressed support for the DoD's request, noting the urgent need for remedial Congressional action to curb predatory loan practices harming service members. The legislation requested was supported by the DoD, military and veterans' organizations, legal aid organizations, consumer advocacy groups, faith-based organizations, and of course lawmakers.

50.    Congress answered the call and passed the MLA to protect Covered Members from unfair, deceptive, and excessively priced loans.

---

[13] *Id.* at 39.

[14] *Id.* at 41–42.

[15] *Id.* at 46.

[16] Specifically, the DoD requested legislation protecting service members "from unfair, deceptive lending practices and usurious interest rates and to require uniform disclosure of credit and terms. Specifically, lenders should not be permitted to base loans on prospective bad checks, electronic access to bank accounts, mandatory military allotments, or titles to vehicles. All costs involved in borrowing should be included in interest rate calculations and disclosures. Laws and regulations must be changed to close regulatory loopholes that leave non-resident military borrowers unprotected in many states." *Id.*

**The Military Lending Act**

51.    In the wake of the DoD's investigations, in 2006, the Military Lending Act, 10 U.S.C. § 987 *et seq*. was enacted.

52.    The MLA makes it unlawful for a creditor to "impose an annual percentage rate of interest greater than 36 percent with respect to the consumer credit extended to a Covered Member or a dependent of a Covered Member." 10 U.S.C. § 987(b).

53.    The MLA also requires mandatory disclosures in "consumer credit"[17] transactions with Covered Members, which include:

- A statement of the annual percentage rate of interest applicable to the extension of credit, 10 U.S.C. § 987(c)(1)(A);
- Any disclosures required under the Truth in Lending Act, 10 U.S.C. § 987(c)(1)(B); and
- A clear description of the payment obligations of the member or dependent, as applicable, 10 U.S.C. § 987(c)(1)(C).

54.    Additionally, the MLA prohibits creditors from including provisions in a consumer-credit transaction that require the Covered Borrower to submit to arbitration or to waive the borrower's right to legal recourse. 10 U.S.C. § 987(e).

55.    The MLA also makes it unlawful to use a check or other method of access to a deposit, savings, or other financial account maintained by the borrower as security for the obligation. 10 U.S.C. § 987(e).

**FACTUAL BACKGROUND**

**Tax Refund Advance Loans**

56.    Defendants market and facilitate short-term, refund-based consumer loans known as TurboTax Refund Advance Loans ("Refund Advance Loans"), which allow taxpayers to receive a portion of their anticipated federal tax refund shortly after filing.

---

[17] Under the MLA, consumer credit is defined as "credit offered or extended to a Covered Member primarily for personal, family, or household purposes," subject to a finance charge or payable by written agreement in more than four installments and outside the ambit of any of the identified exceptions.

-11-

57. Refund Advance Loans are originated by partner banks including First Century Bank, N.A. and/or WebBank, but are offered through and inseparable from the TurboTax platform operated by Intuit.

58. As a condition of receiving a Refund Advance Loan, borrowers must apply for and be approved for a Credit Karma Money Spend checking account provided by MVB Bank, Inc. The originating lender will not process a Refund Advance Loan application unless the borrower has been approved for this required Spend Account (the "Required Accounts").

59. If the loan is approved, the originating lender disburses the proceeds directly into the borrower's Credit Karma Money Spend Account. The Spend Account is offered on behalf of CK Progress Inc. d/b/a Credit Karma as MVB Bank's program partner.

60. Many consumers who obtain Refund Advance Loans, including Plaintiff and similarly situated class members, are covered borrowers within the meaning of the MLA, 10 U.S.C. § 987, including active-duty service members and/or their dependents.

61. Refund Advance Loans are repaid through direct routing and interception of the borrower's federal tax refund. Borrowers authorize the establishment of a temporary deposit account through Green Dot Bank for the purpose of receiving their federal tax refund.

62. Santa Barbara Tax Products Group, LLC ("Processor") deducts from this temporary deposit account not only the amount of the Loan, but also TurboTax-related fees and charges before any remaining balance is transferred to the borrower.

63. Borrowers further authorize Processor to transfer the amount due on the Loan directly to the originating lender, with only the remaining balance disbursed into the Spend Account.

64. This repayment mechanism constitutes an unlawful method of using access to a deposit account and federal tax refund proceeds as security for the obligation, in violation of the MLA's protections for Covered Borrowers.

-12-

65. This required account is not optional or incidental; it is a condition of obtaining the loan.

66. Although Defendants label the Refund Advance Loan as carrying "0% interest," the Military Lending Act requires calculation of the MAPR, which includes not only stated interest, but also fees and charges imposed directly or indirectly as a condition of the extension of credit. 10 U.S.C. § 987(i).

67. Refund Advance Loans are inseparable from a mandatory refund-processing and account structure that enables Defendants and their partners to impose fees incident to the extension of credit.

68. The fees imposed through the Required Accounts are incurred incident to and as a practical condition of receiving the Refund Advance Loan and therefore must be included in the MAPR calculation under the MLA.

69. As part of the Refund Advance program, borrowers authorize Green Dot Bank to establish a temporary deposit account for the sole purpose of receiving the borrower's federal tax refund (the "Green Dot Deposit Account").

70. Santa Barbara Tax Products Group, LLC ("Processor") is then authorized to deduct from this temporary deposit account not only the amount of the Loan, but also TurboTax-related fees and charges before any remaining refund proceeds are disbursed to the borrower.

71. Specifically, borrowers authorize Processor or the Bank to deduct from the Green Dot Deposit Account:

      a. Tax Product fees;

      b. TurboTax fees and charges related to preparation, processing, and transmission of the return;

      c. The full amount of any Refund Advance Loan; and

      d. Fees for additional products and services purchased.

72. In addition, the refund-processing agreement expressly provides for mandatory transaction-based charges, including a $30.00 "Return Item Fee" and a

$30.00 "Account Research and Processing Fee," which may be deducted from the Green Dot Deposit Account and retained by Processor.

73. These fees are imposed in connection with the Refund Advance credit transaction and reduce the borrower's refund proceeds, functioning as finance charges incident to the extension of consumer credit.

74. Because Refund Advance Loans are short-term advances repaid automatically through interception of the borrower's federal refund, even modest mandatory fees result in an effective MAPR that can exceed the MLA's 36% statutory cap when properly calculated.

75. When these fees are annualized over the short duration of the Refund Advance Loan—often lasting only days or weeks—the effective MAPR far exceeds the MLA's 36% statutory cap, particularly for lower-dollar advances.

76. Moreover, borrowers cannot obtain a Refund Advance Loan unless they first apply for and are approved for a Credit Karma Money Spend Account provided by MVB Bank, Inc.

77. This required account is not optional or incidental; it is a condition of receiving loan proceeds and therefore any fees or charges imposed in connection with that account must be included in the MAPR calculation under the MLA.

78. Defendants cannot evade the MLA's protections by labeling these loans "0% APR" while imposing mandatory fees through required accounts and transfer mechanisms that effectively extract unlawful finance charges from service members.

79. As a result, Defendants extended consumer credit to covered borrowers at an unlawful MAPR in violation of 10 U.S.C. § 987(b).

80. In connection with applying for and receiving Refund Advance Loans, consumers are required to sign agreements containing mandatory arbitration provisions, which purport to require binding individual arbitration and waive the right to participate in class or representative actions.

81. The Credit Karma Money Spend account agreement likewise contains mandatory arbitration provisions and expressly forbids class actions.

82. The Military Lending Act expressly prohibits creditors from requiring Covered Borrowers to submit to arbitration or waive their rights to seek relief in court as a condition of consumer credit. 10 U.S.C. § 987(e)(3). Additionally, the MLA expressly prohibits a creditor from demanding unreasonable notice from a borrower as a condition for legal action. 10 U.S.C. § 987(e)(4).

83. Defendants' inclusion and enforcement of arbitration provisions in connection with Refund Advance Loans issued to covered borrowers violates the MLA and renders those provisions void and unenforceable as to covered borrowers.

84. Accordingly, Defendants' inclusion of arbitration and other prohibited provisions in connection with Refund Advance Loans issued to covered borrowers violates the MLA and renders those agreements void and unenforceable as to covered borrowers.

85. Defendants' practices described herein are standardized and uniformly applied to all consumers who apply for and receive Refund Advance Loans.

86. Defendants knew or should have known that: the Required Account fees would be incurred by borrowers in connection with the loan; those fees would cause the MAPR to exceed the MLA's statutory cap; and the inclusion of arbitration provisions violated the express protections afforded to service members under federal law.

## PLAINTIFF SPECIFIC ALLEGATIONS

87. Plaintiff Zachary Bostick is the dependent spouse of an Active-Duty Member of the United States Navy, and is a covered borrower within the meaning of the Military Lending Act, 10 U.S.C. § 987, at all times relevant to this action.

88. In or around the 2024 tax filing season, Plaintiff used the TurboTax platform operated by Defendant Intuit Inc. to prepare and electronically file his federal income tax return.

89. In connection with filing his return through TurboTax, Plaintiff was offered the option to obtain a TurboTax Refund Advance Loan (the "Refund Advance Loan"), marketed as a short-term advance on his anticipated federal tax refund.

90. Plaintiff applied for and obtained a Refund Advance Loan originated by Defendant First Century Bank, N.A. ("FCB") and facilitated through TurboTax and Credit Karma.

91. As part of the standardized Refund Advance Loan program, Plaintiff could not obtain the loan unless he first applied for and was approved for a Credit Karma Money Spend checking account provided by Defendant MVB Bank, Inc.

92. The Refund Advance Loan Agreement expressly provides that FCB "will not process" a loan application unless the borrower has been approved for a Credit Karma Money Spend Account provided by MVB Bank, Inc. In addition to the excessive MAPRs, Plaintiff was required to electronically sign agreements containing mandatory arbitration provisions in connection with applying for and receiving the Refund Advance Loan.

93. Upon approval, the Refund Advance Loan proceeds were disbursed into Plaintiff's Credit Karma Money Spend Account, rather than being delivered directly to Plaintiff without restriction.

94. The Refund Advance Loan Agreement further provides that the Credit Karma Money Spend Account is offered on behalf of CK Progress Inc. d/b/a Credit Karma as MVB Bank's program partner.

95. Plaintiff's Refund Advance Loan was structured to be repaid automatically through interception of Plaintiff's federal tax refund.

96. Plaintiff was required to authorize Green Dot Bank to establish a temporary deposit account for the sole purpose of receiving his federal tax refund (the "Green Dot Deposit Account").

97. Plaintiff was further required to authorize Santa Barbara Tax Products Group, LLC ("Processor") to deduct from this temporary deposit account not only the

-16-

amount of the Refund Advance Loan, but also TurboTax-related fees and other charges, before any remaining refund proceeds were disbursed to Plaintiff.

98. Specifically, Plaintiff authorized Processor or the Bank to deduct from the Green Dot Deposit Account: (i) Tax Product fees; (ii) TurboTax fees; (iii) the amount of the Loan; and (iv) fees for additional products and services purchased.

99. The refund-processing agreement governing Plaintiff's transaction also provides for mandatory transaction-based fees, including a $30.00 "Return Item Fee" and a $30.00 "Account Research and Processing Fee," which may be deducted from the Green Dot Deposit Account and retained by Processor.

100. These fees and deductions are imposed in connection with the Refund Advance Loan program and reduce the amount of Plaintiff's federal tax refund ultimately received, functioning as finance charges incident to the extension of consumer credit.

101. Because Refund Advance Loans are short-term advances repaid automatically through federal refund interception, even modest mandatory fees and charges imposed through the required account structure can cause the Military Annual Percentage Rate ("MAPR") to exceed the MLA's 36% statutory cap.

102. In addition, Plaintiff was required, as part of obtaining the Refund Advance Loan and related refund-processing services, to agree to mandatory arbitration provisions and class action waivers.

103. The Refund Advance Loan Agreement provides that it contains a Mutual Dispute Resolution and Arbitration Provision and Jury Trial and Class Action Waiver governing disputes regarding the loan.

104. The refund-processing agreement likewise contains an arbitration provision requiring claims to be decided by binding arbitration and prohibiting class or representative actions.

105. The inclusion of mandatory arbitration provisions in connection with the Loans violated the MLA's prohibition on requiring covered borrowers to submit to

arbitration, waive their right to seek relief in court, and impose onerous notice requirements on service members seeking to bring legal claims.

106. The MLA expressly prohibits creditors from requiring Covered Borrowers to submit to arbitration or waive their right to seek relief in court as a condition of consumer credit. 10 U.S.C. § 987(e).

107. Defendants' standardized Refund Advance lending structure—requiring Covered Borrowers like Plaintiff to open mandatory accounts, route refunds through temporary deposit accounts controlled by Defendants' partners, authorize automatic repayment deductions, and waive judicial remedies—violates the Military Lending Act.

108. Plaintiff brings this action on behalf of himself, and all similarly situated Covered Borrowers to obtain relief for Defendants' unlawful lending practices.

### TOLLING OF THE STATUTE OF LIMITATIONS

109. The Servicemember Civil Relief Act ("SCRA"), 50 U.S.C. § 3901, *et seq.*, tolls any and all limitations or repose periods for all active-duty military members until their active-duty service concludes.

110. Specifically, § 3936(a) of the SCRA provides:

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

### CLASS ACTION ALLEGATIONS

111. Plaintiff brings this action on behalf of himself and all other persons similarly situated. The proposed "MLA Federal Refund Access Class," the "MLA Excessive MAPR Class" and the "MLA Waiver of Rights Class" (collectively, the "Classes") are defined as follows:

-18-

**MLA Federal Refund Access Class:** All Covered Borrowers who, within the applicable limitations period, obtained a TurboTax Refund Advance Loan and were required to authorize routing of their federal tax refund through a temporary deposit account, for repayment of the loan and deduction of fees.

**MLA Excessive MAPR Class:** All Covered Borrowers, as defined by the Military Lending Act, 10 U.S.C. § 987, who, within the applicable limitations period, obtained a TurboTax Refund Advance Loan, where mandatory fees or charges imposed directly or indirectly as a condition of the credit transaction resulted in a Military Annual Percentage Rate ("MAPR") exceeding 36%.

**MLA Waiver of Rights Class:** All Covered Borrowers who, within the applicable limitations period, obtained a TurboTax Refund Advance Loan and were required, as a condition of receiving that consumer credit, to agree to mandatory arbitration provisions, jury trial waivers, or class action waivers contained in the Refund Advance Loan Agreement and/or refund-processing agreements.

Expressly excluded from the Classes are: (a) any Judge presiding over this action and members of their families; (b) Defendants and any entity in which Defendant has a controlling interest, or which has a controlling interest in any of Defendants, and their legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Classes.

112. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

### Numerosity and Ascertainability

113. Plaintiff is unable to state the precise number of members of the Classes because such information is in the exclusive control of Defendants.

114. However, upon information and belief and the investigation of counsel, Plaintiff believes the proposed Classes each contain members so numerous that separate

joinder of each member of the respective Class is impractical. There are tens or hundreds of thousands of Class Members for the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class, respectively.

115. Defendants' scheme has harmed and continues to harm the members of the Classes.

116. The identities of all Class members are readily ascertainable from the business records of Defendants'.

117. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

### Commonality

118. There are common questions of law and fact affecting the rights of each Class Member and common relief by way of damages. The harm that Defendants have caused is substantially uniform with respect to Class Members. Common questions of law and fact that affect the Class Members include, but are not limited to:

a. Whether Plaintiff, MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class are Covered Members subject to the protections of the MLA;

b. Whether Defendants are "creditors" subject to the requirements and limitations of the MLA;

c. Whether Defendants' loan products constitute an extension of "consumer credit" subject to the protections and limitations of the MLA;

d. Whether Defendants entered into standard form loan agreements with Covered Members;

e. Whether Defendants' loans required access to protected accounts;

f. Whether Defendants' loans exceed the MLA's statutory rate cap of 36% MAPR;

g. Whether Defendants failed to provide required credit disclosures in violation of the MLA;

h. Whether Defendants' standard form loan agreements contain a class action waiver provision, jury trial waiver provision, or onerous legal provisions in violation of the MLA;

i. Whether Defendants' standard form loan agreements contain an arbitration clause in violation of the MLA;

j. Whether Plaintiff, the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class are entitled to actual or statutory damages for the aforementioned violations and, if so, in what amounts;

k. Whether Defendants should be enjoined from continuing their lending practices in the manner challenged herein;

l. Whether Defendants are subject to punitive damages, and, if so, the proper measure of such damages and remedies to which Plaintiff, the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class are entitled under 10 U.S.C. § 987(f)(5); and

m. Whether Plaintiff, the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class are entitled to any other declaratory and/or injunctive relief.

**Typicality**

119. The claims and defenses of Plaintiff are typical of the claims and defenses of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members because Plaintiff is a Covered Member and loan agreements with Defendants are typical of the type of personal, household, or family loans that Defendants normally and routinely provide to Covered Members.

120. Additionally, Defendants use the same or substantially similar standard form loan agreements in all of their lending transactions. While versions may change from year to year, Defendants use substantially similar form documents with all borrowers. The documents involved relevant transactions that were standard form documents, and the violations are statutory in nature.

121. Plaintiff suffered damages of the same type and in the same manner as the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class.

122. There is nothing peculiar about Plaintiff's claims. Plaintiff has no interests antagonistic to the interests of the other members of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class.

### Adequate Representation

123. Plaintiff is an adequate class representative because his interests do not conflict with the interests of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class and he will adequately and fairly protect the interests of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members.

124. Plaintiff intends to prosecute this action vigorously and has taken actions before filing this Complaint by hiring skilled and experienced counsel. There is no conflict between Plaintiff and the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members.

125. Plaintiff's counsel are adequate counsel, are experienced in class action litigation in state and federal courts across the United States and have particular skill in litigating statutory claims under state and federal law. Additionally, attorney Domenica Russo, who will seek admission *pro hac vice* is a veteran, having served the United States as a member of the Army and Army Reserves.

126. Plaintiff and his counsel are committed to vigorously prosecuting the action on behalf of the MLA Federal Refund Access Class, MLA Excessive MAPR

Class and the MLA Waiver of Rights Class and have the financial resources to do so. Neither Plaintiff nor his counsel have interests adverse to those of the Classes.

### Predominance and Superiority

127.   The common questions of law and fact set forth herein predominate over any questions affecting only individual Class Members. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons which are superior to the alternative methods involved in individual litigation:

- The MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members are so numerous as to make joinder impracticable. However, the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members are not so numerous as to create manageability problems. There are no unusual legal or factual issues that would create manageability problems. Prosecution of separate actions by individual members of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

- Adjudications with respect to individual members of the MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

- The claims of the individual MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members are small in relation to the expenses of individual litigation, making a class action the only procedural method of redress in which MLA

Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class Members can, as a practical matter, recover for the harms caused by Defendants.

128.   Given the above, the proposed MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class both fulfill the certification criteria of Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3).

## FIRST CAUSE OF ACTION

## UNLAWFUL SECURITY INTEREST / ACCOUNT ACCESS

**Violations of the Military Lending Act 10 U.S.C. § 987, *et seq.***
**Unlawful Account Access and Refund Interception**
*(On Behalf of Plaintiff and the MLA Class Excessive MAPR Class)*

129.   Plaintiff realleges and incorporates by reference herein the allegations set forth in the above paragraphs.

130.   The Military Lending Act prohibits creditors from extending consumer credit to Covered Borrowers on terms that require unlawful repayment mechanisms or access to a borrower's deposit account as a condition of the extension of credit. 10 U.S.C. § 987(e)(5); 32 C.F.R. § 232.8.

131.   The Military Lending Act prohibits creditors from extending consumer credit to Covered Borrowers on terms that require unlawful repayment mechanisms or access to a borrower's deposit account as a condition of the extension of credit. 10 U.S.C. § 987(e)(5); 32 C.F.R. § 232.8.

132.   In particular, the MLA makes it unlawful for a creditor to require a Covered Borrower to establish an allotment or to repay a consumer credit obligation through preauthorized access to a deposit account, except in narrowly defined circumstances. 10 U.S.C. § 987(e)(5).

133.   Plaintiff and members of the MLA Federal Refund Access Class are "Covered Borrowers" entitled to the MLA's heightened protections.

134. Defendants are "creditors" within the meaning of the MLA because they regularly arrange, facilitate, service, and profit from consumer credit extended to Covered Borrowers through the TurboTax Refund Advance loan program. 10 U.S.C. § 987(i)(5); 32 C.F.R. § 232.3(i).

135. Defendants' Refund Advance lending model is structured around Defendants' access to and control over the borrower's federal tax refund stream.

136. As a condition of obtaining a Refund Advance Loan, borrowers are required to authorize Defendants and their designated financial intermediaries to route, intercept, and apply the borrower's federal tax refund proceeds toward repayment of the loan.

137. Defendants' Refund Advance Loan program requires borrowers to authorize Green Dot Bank to establish a temporary deposit account for receipt of federal tax refund proceeds.

138. The Refund Advance Loan Agreement requires borrowers to instruct and authorize the lender and a designated "Processing Bank" to deduct amounts owed on the loan directly from the borrower's federal tax refund.

139. Borrowers must authorize Santa Barbara Tax Products Group, LLC to deduct loan repayment and fees from that account before any remaining proceeds are disbursed.

140. Borrowers further authorize Processor to transfer the amount due on the Loan directly to the originating lender.

141. This repayment mechanism functions as an unlawful method of securing the obligation through direct access to the borrower's refund proceeds and deposit-account infrastructure, depriving Covered Borrowers of control over their federally protected refund funds.

142. Defendants' required refund-routing and Processing Bank deduction structure constitutes an impermissible repayment condition prohibited by the MLA and its implementing regulations. 10 U.S.C. § 987(e)(5); 32 C.F.R. § 232.8.

143. Defendants' conduct is standardized and uniformly applied to all borrowers who obtain Refund Advance Loans, including Covered Borrowers.

144. As a direct and proximate result of Defendants' unlawful practices, Plaintiff and members of the MLA Federal Refund Access Class have suffered injury, including the loss of control over their federal tax refunds and the imposition of unlawful loan repayment conditions.

145. Accordingly, pursuant to 10 U.S.C. § 987(f)(5), on behalf of himself and the MLA Federal Refund Access Class, Plaintiff seeks an order awarding statutory damages, actual and punitive damages, declaratory and injunctive relief, and such other relief as the Court deems just and proper.

146. Further, Plaintiff is entitled to an award of attorneys' fees and costs pursuant to 10 U.S.C. § 987(f)(5)(B).

**SECOND CAUSE OF ACTION**
**EXCESSIVE INTEREST AND FEES**

**Violations of the Military Lending Act 10 U.S.C. § 987, *et seq*.**
**Excessive MAPR**
***(On Behalf of Plaintiff and the MLA Class Excessive MAPR Class)***

147. Plaintiff realleges and incorporates by reference herein the allegations set forth in the above paragraphs.

148. A "Covered Member" in the statute is a member of the armed forces who is on active duty under a call or order that does not specify a period of 30 days or less.

149. Plaintiff and the MLA Excessive MAPR Class are "Covered Members" and are therefore afforded the protections granted by the MLA.

150. A Covered Member is a consumer who, at the time the consumer becomes obligated to a consumer credit transaction or establishes an account for consumer credit, is a Covered Member of the armed forces or a dependent of a Covered Member (as defined in 32 CFR 232.3(g)(2) and (g)(3)).

151. Plaintiff is considered a "Covered Member" with respect to his loans because Plaintiff is the dependent spouse of an active-duty service member who is obligated by law to repay loans he took out for personal, family, or household purposes.

152. Defendants are "creditors" subject to the requirements and limitations imposed by the MLA in that Defendants engage in the business of extending consumer credit to Covered Members protected by the MLA. 10 U.S.C. § 987(i)(5); 32 C.F.R. § 232.3(i).

153. The Military Lending Act makes it unlawful for a creditor to extend consumer credit to a Covered Borrower with a MAPR greater than 36%. 10 U.S.C. § 987(b).

154. Defendants' standard form loan agreements include mandatory arbitration agreements in violation of 10 U.S.C. § 987(e)(3).

155. Defendants offered and facilitated TurboTax Refund Advance Loans to Covered Borrowers, including Plaintiff, originated by First Century Bank, N.A. and/or WebBank through the TurboTax platform.

156. The Refund Advance Loan program requires borrowers to open and maintain a Credit Karma Money Spend Account provided by MVB Bank, Inc. as a condition of receiving loan proceeds.

157. The loan and refund-processing structure further requires borrowers to authorize the establishment of a temporary Green Dot Deposit Account and the deduction of loan repayment and fees from refund proceeds.

158. The refund-processing agreement provides for mandatory transaction-based fees, including a $30 Return Item Fee and a $30 Account Research and Processing Fee, which may be deducted from refund proceeds and retained by Processor.

159. These fees and charges are imposed incident to, and as a condition of, the extension of consumer credit and therefore must be included in the MAPR calculation under the MLA.

160.    When properly calculated, the MAPR for Defendants' Refund Advance Loans exceeds the MLA's 36% statutory cap.

161.    As a result, Defendants have and continue to violate the Military Lending Act, 10 U.S.C. § 987.

162.    Accordingly, pursuant to 10 U.S.C. § 987(f)(5), on behalf of himself and the MLA Excessive MAPR Class, Plaintiff seeks an order from the Court awarding statutory damages in the amount of $500 per violation, actual and punitive damages, along with injunctive relief pursuant to 10 U.S.C. § 987(f)(5).

163.    Further, Plaintiff is entitled to an award of attorneys' fees and costs pursuant to 10 U.S.C. § 987(f)(5)(B).

## THIRD CAUSE OF ACTION

## <u>WAIVER OF RIGHTS</u>

**Violations of the Military Lending Act 10 U.S.C. § 987, et seq.**
**Unlawful Arbitration and Waiver**
***(On Behalf of Plaintiff and the MLA Waiver of Rights Class Members)***

164.    Plaintiff realleges and incorporates by reference herein the allegations set forth in the above paragraphs.

165.    A "Covered Member" in the statute is a member of the armed forces who is on active duty under a call or order that does not specify a period of 30 days or less.

166.    Plaintiff and the MLA Waiver of Rights Class Members are "Covered Members" and are therefore afforded the protections granted by the MLA.

167.    A Covered Member is a consumer who, at the time the consumer becomes obligated to a consumer credit transaction or establishes an account for consumer credit, is a Covered Member of the armed forces or a dependent of a Covered Member (as defined in 32 CFR 232.3(g)(2) and (g)(3)).

168. Plaintiff is considered a "Covered Member" with respect to his loans because Plaintiff is the dependent spouse of an active-duty service member who is obligated by law to repay loans he took out for personal, family, or household purposes.

169. Defendants are "creditors" subject to the requirements and limitations imposed by the MLA in that Defendants engage in the business of extending consumer credit to Covered Members protected by the MLA. 10 U.S.C. § 987(i)(5); 32 C.F.R. § 232.3(i).

170. The MLA prohibits creditors from attempting to secure the waiver of various rights. 10 U.S.C. § 987(e).

171. Defendants' standard form loan agreements include mandatory arbitration agreements in violation of 10 U.S.C. § 987(e)(3).

172. Defendants' standard form loan agreements include class action waivers and jury trial waivers in violation of 10 U.S.C. § 987(e)(3).

173. Defendants' standard form loan agreements include a demand for unreasonable notice from borrowers as a condition for legal action. 10 U.S.C. § 987(e)(4).

174. As a result, Defendants have and continue to violate the Military Lending Act, 10 U.S.C. § 987.

175. Accordingly, pursuant to 10 U.S.C. § 987(f)(5), on behalf of himself and the MLA Wavier of Rights Class, Plaintiff seeks an order from the Court awarding statutory damages in the amount of $500 per violation, actual and punitive damages, along with injunctive relief pursuant to 10 U.S.C. § 987(f)(5).

176. Further, Plaintiff is entitled to an award of attorneys' fees and costs pursuant to 10 U.S.C. § 987(f)(5)(B).

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the Classes demands a jury trial on all issues and Counts so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, on behalf of the MLA Federal Refund Access Class, MLA Excessive MAPR Class, and the MLA Waiver of Rights Class, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

a. That the Court determine that this action may be litigated as a class action and that Plaintiff and his counsel be appointed class representative and class counsel, respectively;

b. That the Court enter judgment against Defendants and in favor of Plaintiff and the Classes on all counts;

c. That the Court find and declare that Plaintiff, the MLA Federal Refund Access Class, MLA Excessive MAPR Class, and the MLA Waiver of Rights Class Members' standard form loan agreements violate the MLA;

d. That the Court find and declare that Defendants violated the MLA and award Plaintiff and MLA Federal Refund Access Class, MLA Excessive MAPR Class, and the MLA Waiver of Rights Class Members actual damages of not less than $500 per violation pursuant to 10 U.S.C. § 987(f)(5)(A)(i);

e. That the Court award Plaintiff and MLA Federal Refund Access Class, MLA Excessive MAPR Class, and the MLA Waiver of Rights Class Members punitive damages pursuant to 10 U.S.C. § 987(f)(5)(A)(ii);

f. An order awarding Plaintiff and MLA Federal Refund Access Class, MLA Excessive MAPR Class and the MLA Waiver of Rights Class actual, statutory, and all other damages available by law, with pre- and post-judgment interest;

g. An order preventing Defendants from attempting to collect on any loans that violated the MLA from Plaintiff and the Class members;

h. That the Court enjoin Defendants from continuing to engage in unlawful lending practices in violation of the MLA;

i. That Defendants be required by this Court's Order to compensate Plaintiff's counsel for their attorneys' fees and costs of suit, and that Defendants be ordered to bear the cost of notice to the absent class members, as well as the administration of any common fund;

j. That the Court award reasonable attorneys' fees as provided by applicable law, including under the MLA, and/or applicable statutes or code of civil procedure;

k. That the Court award all costs of suit; and

l. That the Court award such other and further relief as the Court may deem just and proper.

DATED:  March 6, 2026

Respectfully submitted,

**ALMEIDA LAW GROUP**

By: */s/ Victor J. Sandoval*
Victor J. Sandoval (Cal. Bar #344461)
3415 S. Sepulveda Blvd, Suite 1121
Los Angeles, CA 90034
T: (562) 534-5907
E: victor@almeidalawgroup.com

David S. Almeida*
849 W. Webster Ave.
Chicago, IL 60614
T: 708-437-6476
E: david@almeidalawgroup.com

**PEIFFER WOLF CARR
KANE CONWAY & WISE LLP**

Brandon M. Wise*
Domenica M. Russo*
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
T: 314-833-4827
E: bwise@peifferwolf.com
E: drusso@peifferwolf.com

*to seek admission *pro hac vice*

*Attorneys for Plaintiff and the Proposed Classes*