Sean R. Higgins (Massachusetts State Bar No. 659105)
*Pro Hac Vice*
Sean.Higgins@klgates.com
K&L GATES LLP
1 Congress Street, Suite 2900
Boston, MA 02114
Telephone: (617) 261-3128
Facsimile: (617) 261-3175

Kevin S. Asfour (SBN 228993)
Kevin.Asfour@klgates.com
Jacob R. Winningham (SBN 357987)
Jacob.Winningham@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: (310) 552-5000
Facsimile: (310) 552-5001

Attorneys for Defendant
FIRST CENTURY BANK, N.A.

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

ZACHARY BOSTICK, individually and on behalf of himself and all others similarly situated,

*Plaintiff*,

v.

INTUIT, INC. d/b/a TURBOTAX, INTUIT TT OFFERINGS, INC., CK PROGRESS, INC. d/b/a CREDIT KARMA LLC, MVB BANK, INC., FIRST CENTURY BANK, N.A., SANTA BARBARA TAX PRODUCTS GROUP, LLC, and GREEN DOT BANK,

*Defendants*.

Case No. 3:26-cv-01444-H-VET

**DEFENDANT FIRST CENTURY BANK, N.A.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Date: September 14, 2026
Time: 10:30 am
Judge: Hon. Marilyn L. Huff
Courtroom: 12A

# NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT,** on **September 14, 2026**, at **10:30 am**, or as soon thereafter as this matter may be heard by the Honorable Marilyn L. Huff, in the United States District Court for the Southern District of California, Courtroom 12A, 333 West Broadway, San Diego, CA 92101, Defendant First Century Bank, N.A., ("Defendant" or "FCB"), by and through its counsel of record, will and hereby does move this Court to dismiss with prejudice all claims and cause of actions contained in the Complaint (Dkt. 1) of Plaintiff Zachary Bostick ("Plaintiff" or "Bostick") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all papers and pleadings on file or deemed to be on file herein, and any other such papers, pleadings, evidence, or argument as may be presented before or at the hearing on this Motion.

Dated: May 15, 2026 **K&L GATES LLP**

By: */s/ Jacob R. Winningham*
Jacob R. Winningham
Sean R. Higgins
Kevin S. Asfour

*Attorneys For Defendant*
*First Century Bank, N.A.*

# TABLE OF CONTENTS


I. Introduction. ....................................................................................1

II. Factual Background ..........................................................................3

III. Argument. ..........................................................................................4

A. Bostick's Complaint Is Subject to Dismissal Under Rule 12(b)(6) Because He Uses An Improper Group Pleading Approach. ....................................4

B. The MLA Does Not Apply to the Loan. ................................................... 7

C. Even If The MLA Applies, Bostick's Three Causes Of Action Under The Statute Nevertheless Fail. ....................................................................... 9

1. Count I, Asserting Unlawful Account Access And Refund Interception, Fails Because The Account Access About Which Bostick Complains Is Lawful Under The MLA. ............................. 9

2. Count II, Asserting Excessive MAPR, Fails Because Bostick Attempts To Add Costs And Fees That Are Not Properly Included In The MAPR Calculation To Assert That His Rate Was "Excessive." ..........................................................................10

3. Count III, Asserting Unlawful Arbitration And Waiver, Fails Where The **First Paragraph** Of The Loan Agreement Contains An Express Waiver Of The Included Arbitration Provision For Any Borrower Covered By The MLA. .................................................14

IV. Conclusion. .........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....5, 6

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990)....4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....4, 5, 6

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994)....5

*Conley v. Gibson*,
351 U.S. 41 (1957)....4

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026)....1, 6, 9

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008)....4

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009)....4

*N. Star Int'l v. Arizona Corp. Comm'n*,
720 F.2d 578 (9th Cir. 1983)....4

*Sahel Oncology, LLC v. STA Pharm. Hong Kong Ltd.*,
Case No. 23-cv-1458-BAS-DDL, 2024 WL 3049851 (S.D. Cal. June 18, 2024)....5

*Sollberger v. Wachovia Secs., LLC*,
No. SACV 09-0766 AG (ANx), 2010 WL 2674456 (C.D. Cal. June 30, 2010)....6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....5, 8

*Paulsen v. CNF, Inc.*,
559 F.3d 1061 (9th Cir. 2009)....5

*Virachak v. Univ. Ford*, 410 F.3d 579 (9th Cir. 2005) .......... 12

**Statutes**

10 U.S.C. § 987 .......... 1

10 U.S.C. § 987(b) .......... 11

10 U.S.C. § 987(e)(5) .......... 9

12 C.F.R. § 1026.4(a) .......... 7, 8, 12, 13, 14

12 C.F.R. § 1026.4(a)(1) .......... 7, 12

12 C.F.R. § 1026.2(a)(20) .......... 11

32 C.F.R. § 232.2(a)(1) .......... 2, 7

32 C.F.R. § 232.3(f)(1) .......... 2, 7

32 C.F.R. § 232.3(f)(2) .......... 7

32 C.F.R. § 232.3(n) .......... 7, 12

32 C.F.R. § 232.4(c)(1)(i) .......... 11

32 C.F.R. § 232.4(c)(1)(ii) .......... 11

32 C.F.R. § 232.4(c)(1)(iii) .......... 11

32 C.F.R. § 232.8(e)(1) .......... 10

32 C.F.R. § 232.8(e)(3) .......... 10

**Other Authorities**

Comptroller's Handbook, Consumer Compliance, Military Lending Act (Version 1.0, May 2018), https://www.occ.treas.gov/publications-and-resources/publications/comptrollers-handbook/files/military-lending-act/index-military-lending-act.html .......... 7

Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members, 81 FR 58840-01, 2016 WL 4474980 (Aug. 26, 2016) .......... 15

Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members, 82 FR 58739-01, 2017 WL 6368550 (Dec. 14, 2017) ....................10

Fed. R. Civ. P. 8(a) ....................4

Fed. R. Civ. P. 12(b)(6) ....................5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Defendant Intuit, Inc., ("Intuit"), the maker of TurboTax, offers free or low-cost tax-preparation software to its customers. Intuit also helps its customers access a portion of their anticipated refunds via short-term consumer loans from third-party lenders. Intuit does not lend money, however, it provides its customers with access to banks that offer loans. One of those banks is Defendant First Century Bank, N.A. ("Defendant" or "FCB"). For its part, FCB offers Intuit's customers access to a short term no-fee, no-interest loan known as a Refund Advance Loan ("Loan"). To receive a Loan, an Intuit customer must sign a Refund Advance Loan Agreement ("Loan Agreement") with FCB and then apply for and qualify for a Loan.

In this case, Plaintiff Zachary Bostick ("Plaintiff" or "Bostick") used Intuit's TurboTax software to prepare and electronically file his 2023 federal income tax return. Instead of waiting for his anticipated refund, Bostick elected to apply for and obtain a Loan from FCB that he later repaid. As the spouse of a United States Navy member, Bostick now brings this class action lawsuit claiming that his Loan violates the Military Lending Act (the "MLA," 10 U.S.C. § 987). As set forth below, Bostick's claims fail as a matter of law, however, for three independent reasons.

**First**, Bostick's Complaint uses an improper group pleading approach rendering it improper under the applicable pleading standard. Though he sues multiple defendants, Bostick lumps them into one group of "Defendants" without alleging specific wrongful acts by each party. This "shotgun"-style pleading is impermissible in the Ninth Circuit. *See Gibson v. City of Portland*, 165 F.4th 1265, 1287-88 (9th Cir. 2026) (defining "shotgun pleading" as including "a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" and affirming the trial court's dismissal of the complaint as an improper "shotgun pleading"). As a result, the entire Complaint is subject to dismissal.

**<u>Second</u>**, the MLA does not apply to the Loan where it imposes no finance charge and is payable in only one installment. 32 C.F.R. § 232.3(f)(1). The MLA is implemented by 32 § C.F.R. 232.1(a)(1). *See* 32 C.F.R. § 232.2(a)(1) ("(a) This part is issued by the Department of Defense to implement 10 U.S.C. 987."). For the MLA to apply, there must be "consumer credit" as defined in the regulation. 32 C.F.R. § 232.2(a)(1). "Consumer credit" means "credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that is: (i) Subject to a finance charge; or (ii) Payable by a written agreement in more than four installments." 32 C.F.R. § 232.3(f)(1). Because the Loan satisfies ***neither*** the "subject to a finance charge" prong nor the "payable [] in more than four installments" prong, the MLA does not apply. Thus, as all three causes of action in the Complaint rely on the MLA, the entire Complaint is subject to dismissal because the MLA does not apply to the Loan.

**<u>Third</u>**, even if the MLA applies, Bostick's three causes of action under the statute nevertheless fail. Count I, asserting Unlawful Account Access and Refund Interception, fails because the account access about which Bostick complains is permissible and lawful under the MLA. Count II, asserting Excessive MAPR, fails because Bostick attempts to add costs and fees that are not properly included in the MAPR calculation to assert that his rate was "excessive." Count III, asserting Unlawful Arbitration and Waiver, fails (and is essentially specious) where the Loan Agreement contains, in bold, ALL-CAPS font, an express waiver of the included arbitration provision for any active duty members of the armed forces or their dependents. Therefore, Bostick's MLA causes of action all fail as a matter of law and should be dismissed under Rule 12(b)(6) and 12(b)(6).

FCB adopts by reference and joins, to the extent applicable, the legal arguments of its co-defendants Intuit, Inc., Intuit TT Offerings, Inc., CK Progress, Inc. d/b/a Credit Karma LLC, MVB Bank, Inc., Santa Barbara Tax Products Group, LLC, and Green Dot Bank in their contemporaneously filed motions to dismiss.

## II. FACTUAL BACKGROUND

FCB adopts by reference the factual background set forth in Defendants Intuit Inc., Intuit TT Offerings Inc., and CK Progress Inc.'s Motion to Dismiss. *See* Notice Of Motion And Motion To Dismiss By Intuit Inc., Intuit TT Offerings, Inc., and CK Progress, Inc.; Memorandum Of Points And Authorities In Support Thereof, ECF 31 (the "Intuit MTD").[1] For purposes of the present motion, the following facts are specifically relevant to FCB and its arguments in support of dismissal:

Bostick, the spouse of a service member and a California resident, prepared and filed his 2023 taxes using TurboTax in 2024. Compl. at ¶¶ 29, 88–90. Rather than await his anticipated refund, Bostick elected to apply for and obtain the Loan from FCB. *Id.* at ¶¶ 95–97. The Loan Agreement that Bostick signed with FCB confirmed that the Loan had "**$0.00** in fees, charges, or points in connection with the Loan" and disclosed APR of 0.0%. Brock Declaration, Ex. B, FCB Refunds Advance Loan Agreement (the "FCB Loan Agreement") at 1-2 (emphasis added); *see also id.* ("No interest accrues on the outstanding principal balance of the Loan. We charge $0.00 in fees, charges, or points in connection with the Loan. . . . The Finance Charge for this Loan is 0.00%."). In addition to the Loan, Bostick entered into a separate agreement with MVB Bank, Inc. ("MVB") to establish and govern a deposit account into which the Loan proceeds were deposited. Brock Declaration, Ex. C, Credit Karma Money Spend Account Terms & Disclosures (the "MVB Agreement"). FCB was not a party to the agreement between Bostick and MVB. Bostick also entered into a separate agreement with Green Dot Bank ("Green Dot Bank") and Santa Barbara Tax Products Group ("SBTPG") governing receipt of his tax refund into a temporary deposit account, repayment of the Loan principal, and disbursement of any remaining refund. FCB was not a party to the agreement between Bostick, Green Dot Bank, and SBTPG. After FCB approved and

---

[1] Intuit relies upon the Declaration of Justin Brock (the "Brock Declaration") and exhibits appended thereto in support of its Motion to Dismiss. FCB adopts and relies upon the Brock Declaration and its exhibits in support of this motion.

funded the Loan, the loan proceeds were deposited into a Credit Karma Money Spend Account issued and maintained by MVB.

On March 6, 2026, Bostick filed this putative class action seeking damages and statutory penalties based on the theory that the Loan violated the MLA in three ways. First, Plaintiff alleges that defendants violated Section 987(e)(5) of the MLA because, to facilitate repayment from the borrower's refund, borrowers authorize Green Dot Bank and SBTPG to receive the refund in temporary accounts and apply funds to repayment of the Loan principal. Compl. at ¶¶ 129–46. Second, Plaintiff alleges that the Loan's MAPR exceeded the statutory 36% cap in violation of Section 987(b). *Id.* at ¶¶ 147–63. Third, Bostick contends that all defendants violated the MLA because the Loan Agreement included an arbitration provision (that does not apply to him due to an express waiver). *Id.* at ¶¶ 164–76.

## III. ARGUMENT.

### A. Bostick's Complaint Is Subject to Dismissal Under Rule 12(b)(6) Because He Uses An Improper Group Pleading Approach.

"The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *See N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983) (citation omitted). In a complaint, a plaintiff must, at a minimum, provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). This pleading requirement "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 351 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) is proper where there is either a lack of "a cognizable legal theory" or a lack of "sufficient facts to support a cognizable legal theory." *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable

inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").

Notably, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligations to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted). It is well-established that a complaint will not suffice if it merely includes "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (collecting cases). Similarly, Rule 8(a) "'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *See Sahel Oncology, LLC v. STA Pharm. Hong Kong Ltd.*, Case No. 23-cv-1458-BAS-DDL, 2024 WL 3049851, at *4 (S.D. Cal. June 18, 2024) (quoting *Iqbal*, 556 U.S. at 678).

In deciding whether to dismiss a complaint under Rule 12(b)(6), a court may consider not only the allegations in the complaint, but also "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Courts need not accept as true conclusory allegations that are contradicted by documents incorporated into the complaint by reference. *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

Bostick's Complaint is subject to dismissal under Rule 12(b)(6) and the controlling precedent described above because he improperly utilizes a "shotgun

pleading" approach to lump all Defendants together without adequately explaining how or why each party is liable under the MLA. *See* Compl. at ¶ 39 ("Defendants have acted in concert and are jointly and severally liable for their concerted and collective violations of the MLA"); *id.* at ¶¶ 76-79 ("Defendants cannot evade the MLA's protections by labeling these loans '0% APR' while imposing mandatory fees through required accounts and transfer mechanisms . . ."). This pleading style is not allowed under controlling Ninth Circuit precedent. *See Gibson*, 165 F.4th at 1287-88 (affirming trial court's dismissal of the complaint using improper "shotgun pleading").

The Complaint's "everyone did everything" strategy is particularly egregious in light of *Twombly*, *Iqbal* and their progeny, all of which require that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The conclusory allegations found in the Complaint—aimed simultaneously at all defendants—do not state a facially plausible claim to relief because they fail to allege ***which*** Defendant is responsible for ***which*** allegedly-wrongful act.

The *Sollberger v. Wachovia Secs., LLC* matter from the Central District of California is illustrative here. *See Sollberger v. Wachovia Secs., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456 (C.D. Cal. June 30, 2010). In that case, the Court dismissed the plaintiff's complaint as insufficient under "Rule 8(a), Rule 9(b), *Iqbal* [and] *Twombley*" where the complaint improperly "use[d] the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong." *Id.* at *4-5. Like the dismissed complaint in *Sollberger*, Bostick's Complaint here does little more than lump all Defendants together without stating which party is responsible for which alleged wrong. *Compare Sollberger*, 2010 WL 2674456, at *4-5, with Compl. at ¶¶ 39, 76-79 (using the omnibus term "Defendants" to allege that all Defendants are "jointly and severally liable"). Plaintiff fails to address ***each*** Defendant's alleged wrongdoing, and

therefore has failed to sufficiently state any claim. Because this "shotgun pleading" approach is impermissible in the Ninth Circuit, the Court should dismiss the Complaint.

**B. The MLA Does Not Apply to the Loan.**

All of Bostick's claims fail as a threshold matter of law because the MLA does not apply to the Loan. The MLA is implemented by 32 C.F.R. Part 232, which states that the MLA applies only if the transaction constitutes "consumer credit." *See* 32 C.F.R. § 232.2(a)(1). "Consumer credit" is defined as credit extended to a covered borrower primarily for personal, family or household purposes that is either "(i) [s]ubject to a finance charge; or (ii) [p]ayable by a written agreement in more than four installments." 32 C.F.R. § 232.3(f)(1). The regulation further excludes from that definition "[a]ny credit transaction that is an exempt transaction for the purposes of Regulation Z . . . or otherwise is not subject to disclosure requirements under Regulation Z."[2] 32 C.F.R. § 232.3(f)(2). The Loan, by its express terms set forth in the Loan

---

[2] The MLA further adopts the definition of "finance charge" found in Regulation Z. *See* 32 C.F.R. § 232.3(n). Regulation Z first defines "finance charge" as "[T]he cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction." 12 C.F.R. § 1026.4(a).

Regulation Z also adds that "The finance charge includes fees and amounts charged by someone other than the creditor, unless otherwise excluded under this section, if the creditor: (i) Requires the use of a third party as a condition of or an incident to the extension of credit, even if the consumer can choose the third party; or (ii) Retains a portion of the third-party charge, to the extent of the portion retained." 12 C.F.R. § 1026.4(a)(1).

The Office of the Comptroller's Handbook for the Military Lending Act also notes: "The MLA regulation's definition of 'consumer credit' has been amended to align more closely with the definition of the same term in Regulation Z. It is the DOD's intent that the term as used in the MLA regulation should, whenever possible, be interpreted consistently with Regulation Z. Notably, however, the MLA and the implementing regulation do not apply to certain types of loans extended to covered borrower that are covered by Regulation Z . . . ." *See* Comptroller's Handbook, Consumer Compliance, Military Lending Act (Version 1.0, May 2018), https://www.occ.treas.gov/publications-and-resources/publications/comptrollers-handbook/files/military-lending-act/index-military-lending-act.html. The OCC is the primary federal regulator for national banks such as FCB. *See* https://banks.data.fdic.gov/bankfind-suite/bankfind/details/57123.

Agreement between Bostick and FCB, satisfies ***neither*** the "subject to a finance charge" prong nor the "payable [] in more than four installments" prong.[3]

First, the Loan is not subject to a finance charge. The Loan Agreement expressly states that "[n]o interest accrues on the outstanding principal balance of the loan." FCB Loan Agreement at 1-2. The same Loan Agreement further confirms "$0.00 in fees, charges or points." *Id.* This is relevant because, as mentioned above, the MLA adopts Regulation Z's definition of "finance charge." That definition is limited, in relevant part, to "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a). The Loan, therefore, is not subject to a finance charge because it does not charge interest, fees or any other "charge[s] payable directly or indirectly by the consumer."

Second, the Loan is not payable in more than four installments. The Loan Agreement confirms:

> "You promise to pay us the outstanding balance of the Loan or the amount of your Tax Refund, whichever is less, on the day your Tax Refund is received. You acknowledge and agree that you instruct and authorize FCB, or another financial institution that establishes a temporary bank account on your behalf, (in either case, the 'Processing Bank') to deduct from any or all of your Tax Refund all amounts owed by you for the Loan, up to lesser of the amount of the Loan or your Tax Refund."

FCB Loan Agreement at 1. This language confirms only a single payment. Thus, the Loan is not payable in more than four installments.

[3] The Court may consider the Loan Agreement and the other agreements between Bostick and the defendants because they are "documents incorporated into the complaint by reference." *See* Compl. at ¶¶ 90–97 (describing agreements with FCB, MVB, Green Dot Bank, and SBTPG); *Tellabs*, 551 U.S. at 322.

Because the Loan satisfies ***neither*** the "subject to a finance charge" prong nor the "payable [] in more than four installments" prong, the MLA does not apply. Thus, all three of Bostick's causes of action, which rely on the MLA, fail as a matter of law.

**C. <u>Even If The MLA Applies, Bostick's Three Causes Of Action Under The Statute Nevertheless Fail.</u>**

Bostick's MLA causes of action all fail as a matter of law and should be dismissed under Rule 12(b)(6) and Rule 12(b)(6).

*1. Count I, Asserting Unlawful Account Access And Refund Interception, Fails Because The Account Access About Which Bostick Complains Is Lawful Under The MLA.*

Section 987(e)(5) of the MLA makes it unlawful for "any creditor to extend consumer credit" where the creditor "uses a check or other method of access to a deposit, savings, or other financial account maintained by the borrower." 10 U.S.C. § 987(e)(5). Plaintiff alleges that the Loan violates this provision because it allows "direct access to the borrower's refund proceeds and deposit-account infrastructure" through the temporary account that Green Dot Bank sets up to receive the customer's refund. Compl. at ¶ 135. Bostick does not—and cannot—allege that FCB accesses his account. While Bostick may rely on his group pleading approach, that is not adequate. *See Gibson*, 165 F.4th at 1291. Pursuant to their separate agreement with Bostick, Green Dot Bank and SBTPG, respectively, establish a temporary refund deposit account and process the refund. *See* MVB Agreement. FCB is not a party to Bostick's separate agreement with Green Dot Bank and SBTPG and FCB does not access Bostick's temporary account that Green Dot sets up. Thus, FCB cannot be liable for accessing Bostick's account under 10 U.S.C. § 987(e)(5).

Regardless, the regulations interpreting Section 987(e)(5) confirm that the account access about which Bostick complains is entirely lawful and permissible. The regulations provide that a "creditor may … [r]equire an electronic fund transfer to repay a consumer credit transaction" and can "take a security interest in funds deposited after

the extension of credit in an account established in connection with the consumer credit transaction," unless otherwise prohibited by law. 32 C.F.R. §§ 232.8(e)(1), (e)(3). The Department of Defense, which promulgates the MLA's implementing regulations, has confirmed that the regulations "do[] not prohibit covered borrowers from granting a security interest to a creditor in the covered borrower's checking, savings, or other financial account, provided that it is not otherwise prohibited by other applicable law and the creditor complies with all other provisions of the MLA regulation, including the limitation on the MAPR to 36 percent." Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members, 82 FR 58739-01, 2017 WL 6368550, at *58740 (Dec. 14, 2017). This is precisely the transfer that Bostick has outlined in his Complaint.

The relevant agreements "require an electronic fund transfer to repay a consumer credit transaction." That is what happens. TurboTax customers who obtain a Loan agree to have their refunds transferred electronically to repay their short-term loan. *See* 32 C.F.R. § 232.8(e)(1). Green Dot Bank and SBTPG establish temporary deposit accounts and facilitate the deposit of customers' refunds into those accounts "after the extension of credit." *See* 32 C.F.R. § 232.8(e)(3). Borrowers grant FCB a "security interest" in the portion of the refund that is used to repay the Loan, but that is permissible under the regulation and thus lawful. *See* 32 C.F.R. § 232.8(e)(3). Bostick preauthorized Green Dot Bank and SBTPG to have his refund sent to a temporary deposit account and preauthorized repayment of the Loan. This transaction structure is expressly permitted by the applicable regulations. Thus, Bostick has not plausibly alleged any violation of Section 987(e)(5).

2. *Count II, Asserting Excessive MAPR, Fails Because Bostick Attempts To Add Costs And Fees That Are Not Properly Included In The MAPR Calculation To Assert That His Rate Was "Excessive."*

In Count II, Bostick relies on Section 987(b) of the MLA, which makes it unlawful for a "creditor" to "impose an annual percentage rate of interest greater than 36 percent

with respect to the consumer credit extended to" an active-duty member of the military or a dependent of an active-duty member, to advance his so-called "Excessive MAPR" theory. 10 U.S.C. § 987(b). Count II is fatally flawed because as the Loan Agreement confirms, the Loan has no fees or charges imposed as a condition of credit. "No interest accrues on the outstanding principal balance of the Loan," and "[FCB] charge[s] **$0.00** in fees, charges, or points in connection with the Loan." FCB Loan Agreement at 1-2. Recognizing, as he must, that the Loan does not exceed the 36% threshold because he paid no interest or additional fees for the loan, Bostick attempts to draw in costs and fees (some of which he did not pay) to cross the 36% statutory threshold. But these costs and fees are not properly included in the MAPR, and therefore his theory fails as a matter of law.

The MLA's implementing regulations lay out three categories of fees that must be included in the MAPR. The first category includes "[a]ny credit insurance premium or fee, any charge for single premium credit insurance, any fee for a debt cancellation contract, or any fee for a debt suspension agreement." 32 C.F.R. § 232.4(c)(1)(i). The second category includes "[a]ny fee for a credit-related ancillary product sold in connection with the credit transaction for closed-end credit or an account for open-end credit." 32 C.F.R. § 232.4(c)(1)(ii). The third category includes (A) "[f]inance charges associated with the consumer credit," (B) certain application fees charged to a consumer who applies for consumer credit, and (C) certain fees charged in connection with open-end credit that are not relevant here because the Loan does not involve open-end credit.[4] 32 C.F.R. § 232.4(c)(1)(iii). Bostick's MLA-based claims relies on the theory that certain "fees and charges are imposed incident to, and as a condition of, the extension of consumer credit and therefore must be included in the MAPR calculation under the MLA." Bostick does not mention fees that would fall into the first two categories. Only

[4] The MLA regulation defines "open-end credit" by reference to that definition under Regulation Z, which defines the term as meaning, in relevant part, credit extended under a plan in which the creditor "reasonably contemplates repeated transactions." 12 C.F.R. § 1026.2(a)(20). The Loan involves a single extension of credit and no repeat transactions.

the third category is relevant to the Court's analysis.

The MLA regulations adopt the definition of "finance charge" set out in Regulation Z of TILA. 32 C.F.R. § 232.3(n). Under Regulation Z, the "finance charge" is:

> "…[T]he cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction."

12 C.F.R. § 1026.4(a). Regulation Z also defines "finance charge" to include certain third-party fees:

> "The finance charge includes fees and amounts charged by someone other than the creditor, unless otherwise excluded under this section, if the creditor: (i) Requires the use of a third party as a condition of or an incident to the extension of credit, even if the consumer can choose the third party; or (ii) Retains a portion of the third-party charge, to the extent of the portion retained."

12 C.F.R. § 1026.4(a)(1). As noted, a finance charge "does not include any charge of a type payable in a comparable cash transaction." 12 C.F.R. § 1026.4(a). That is, where the price paid is "the same on credit or cash terms," there is no finance charge. *Virachak v. Univ. Ford*, 410 F.3d 579, 582 (9th Cir. 2005). Under the plain language of Regulation Z, none of the fees, costs, or charges that Bostick attempts to add to the MAPR calculation are actually "finance charges."

First, Bostick attempts to add repayment of the Loan principal itself in his MAPR calculation. Compl. at ¶ 71(c). The principal is the "amount financed," not a "finance charge." Definitionally, Bostick's attempt to add the Loan's principal is improper. FCB further adopts the argument set forth in section IV(B)(1) of the Intuit MTD ("1. The loan principal is not included in the MAPR.").

Second, Bostick incorrectly attempts to add the "fees and charges related to preparation, processing, and transmission of the return" he incurred through the TurboTax product. Compl. at ¶ 71(a), (b). Again, the TurboTax fee is not a "finance charge" because it is not "incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a). Indeed, the fee that Bostick paid back to Intuit to process his tax return using the TurboTax software is entirely unrelated to Loan. Whether he applied for and obtained the Loan or not, Bostick would have paid the TurboTax fee to use the TurboTax software to prepare and submit his return. Nor was Bostick required to pay for his TurboTax fees through his tax return in order to obtain the Loan, he simply chose to do so. FCB specifically adopts by reference the arguments set forth by Intuit as to why the TurboTax fees are not properly added to the MAPR.

Third, Bostick tries to add hypothetical out-of-network ATM withdrawal fees that may be charged. Compl. at ¶ 10. As an initial matter, Bostick lacks standing to challenge out-of-network ATM fees because he does not allege that he paid them. In any event, these ATM fees are not finance charges because they are not "incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a). Neither MVB nor banks that operate out-of-network ATMs are creditors making the Loan, and customers are not required to pay any ATM fees to obtain a Loan from FCB. Not only do the ATM fees have no connection to the Loan, but borrowers can avoid paying those fees entirely by withdrawing their funds from the Credit Karma account without using any ATM, such as by making payments and transfers to third parties on line, withdrawing funds over-the-counter (OTC) at participating tellers, or simply using their debit card to make purchases. MVB Agreement at 16. Further, third-party ATM fees do not qualify as finance charges because they are "payable in a comparable cash transaction." 12 C.F.R. § 1026.4(a). They are no different from the fees that customers of any bank pay when using an ATM outside of their bank's network.

Fourth and finally, Bostick tries to add the contingent Return Item Fee and Account Research and Processing Fee described in his agreement with Green Dot Bank

and SBTPG into his MAPR calculation. Compl. at ¶¶ 71(d), 157. In the same way that Bostick fails to allege that he paid any ATM fees, he likewise fails to allege that he paid either the contingent Return Item Fee or the contingent Account Research and Processing Fee, so he lacks standing to challenge these fees.[5] Nonetheless, the contingent fees associated with Bostick's agreement with Green Dot Bank and SBTPG are not "finance charges" because they are not "an incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a). The Green Dot Bank and SBTPG fees are only incurred if Green Dot Bank or SBTPG have to take further action when processing refunds and deposits, but they are not a condition of obtaining the Loan. These contingent fees apply to all TurboTax customers for whom Green Dot Bank establishes temporary deposit accounts—regardless of whether those customers obtain a Loan. Because the Return Item Fee and Account Research and Processing Fee are contingent on future events and not necessary to obtain the Loan, they are not properly included in the MAPR calculation.

### 3. *Count III, Asserting Unlawful Arbitration And Waiver, Fails Where The **First Paragraph** Of The Loan Agreement Contains An Express Waiver Of The Included Arbitration Provision For Any Borrower Covered By The MLA.*

The Loan Agreement states (in bold, ALL-CAPS font) that "THIS AGREEMENT INCLUDES AN ARBITRATION PROVISION WITH A CLASS ACTION WAIVER (UNLESS YOU ARE A COVERED BORROWER UNDER THE MILITARY LENDING ACT). PLEASE READ IT CAREFULLY." FCB Loan Agreement at 1. The Department of Defense has confirmed in an interpretive rule that creditors may permissibly use a "savings clause" like the one used by FCB here to exclude covered

---

[5] Bostick alleges that Green Dot established a temporary account to receive tax-refund proceeds and that SBTPG deducted and disbursed those proceeds after FCB originated the Loan. Compl. at ¶¶ 37, 90, 95–99. Though he alleges that he *authorized* SBTPG to deduct the Loan amount, TurboTax-related fees, and other contingent charges (if necessary) from that account before disbursing the remaining refund proceeds, he does not allege that SBTPG or Green Dot charged him the Return Item Fee or the Account Research and Processing Fee. *Id.* at ¶¶ 95–99.

borrowers from prohibited notice, waiver, arbitration, or other terms that would otherwise be applicable to non-covered borrowers. *See* Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members, 81 FR 58840-01, 2016 WL 4474980, at *58844 (Aug. 26, 2016). Thus, because the arbitration provision does not apply to Bostick, his claim in Count III fails as a matter of law.

## IV. <u>CONCLUSION.</u>

For the foregoing reasons, Defendant First Century Bank, N.A. respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated: May 15, 2026 **K&L GATES LLP**

By: */s/ Jacob R. Winningham*
Jacob R. Winningham
Sean R. Higgins
Kevin S. Asfour

Attorneys for Defendant
FIRST CENTURY BANK, N.A.