GIBSON, DUNN & CRUTCHER LLP
Austin Schwing, Bar No. 211696
aschwing@gibsondunn.com
Sean Howell, Bar No. 315967
showell@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, California 94111-3715
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Lauren M. Blas, Bar No. 296823
lblas@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Defendants*
*Intuit Inc., Intuit TT Offerings Inc., and CK Progress, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

ZACHARY BOSTICK, individually and on behalf of himself and all others similarly situated,

Plaintiff,

v.

INTUIT, INC. d/b/a TURBOTAX,
INTUIT TT OFFERINGS, INC.,
CK PROGRESS, INC. d/b/a CREDIT KARMA LLC,
MVB BANK, INC.,
FIRST CENTURY BANK, N.A.
SANTA BARBARA TAX PRODUCTS GROUP, LLC, and
GREEN DOT BANK,

Defendants.

Case No. 3:26-CV-01444-H-VET

**DEFENDANTS INTUIT INC., INTUIT TT OFFERINGS, INC., AND CK PROGRESS, INC.'S REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Date: September 14, 2026
Time: 10:30 a.m.
Place: Courtroom 12A
Judge: Hon. Marilyn L. Huff

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The MLA claims fail against the Non-Creditor Defendants because only creditors can be liable under the MLA .......... 2

B. Plaintiff has not plausibly alleged that the MLA applies or that the Loan violated its 36% MAPR cap .......... 6

1. The TurboTax fee is not a finance charge and does not belong in the MAPR .......... 7

2. Plaintiff lacks standing to challenge the contingent ATM and SBTPG fees and does not plausibly allege that they are finance charges .......... 8

3. There is no other basis for including any fees in the MAPR .......... 11

C. Plaintiff has not plausibly alleged a violation of the MLA's account-access provision .......... 13

D. Plaintiff has not plausibly alleged a violation of the MLA's arbitration provisions .......... 14

III. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re BAM Trading Servs. Inc. Sec. Litig.*,
733 F. Supp. 3d 854 (N.D. Cal. 2024) ........ 16

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ........ 16

*Bowen v. First Family Fin. Servs., Inc.*,
233 F.3d 1331 (11th Cir. 2000) ........ 17

*City of Atascadero v. Merrill Lynch*,
68 Cal. App. 4th 445 (1998) ........ 15

*Espin v. Citibank, N.A.*,
126 F.4th 1010 (4th Cir. 2025) ........ 17

*FDIC v. Ashmore*,
698 F. App'x 286 (6th Cir. 2017) ........ 5

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017) ........ 4

*Household Credit Servs., Inc. v. Pfennig*,
541 U.S. 232 (2004) ........ 7

*Huertas v. Foulke Mgmt. Corp.*,
2021 WL 5755081 (3d Cir. Dec. 3, 2021) ........ 8

*Opportunity Fin., LLC v. Hewlett*,
No. 22STCV08163, Statement of Decision (Cal. Super. Ct. May 19, 2026) ........ 4

*Pechinski v. Astoria Fed. Sav. & Loan Ass'n*,
345 F.3d 78 (2d Cir. 2003) ........ 10

*People v. JTH Tax, Inc.*,
212 Cal. App. 4th 1219 (2013) ........ 4

*Quildon v. Intuit, Inc.*,
2012 WL 1902021 (N.D. Cal. May 25, 2012) ........ 8

*Richmond v. Home Partners Holdings LLC*,
2023 WL 2787221 (W.D. Wash. Apr. 5, 2023) ........ 8

*Ridha v. Mortg. Elec. Registration Sys., Inc.*,
2010 WL 4867416 (E.D. Mich. Nov. 23, 2010) .......... 3

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) .......... 4, 5, 8

*Stein v. TitleMax of Ga., Inc.*,
819 F. App'x 809 (11th Cir. 2020) .......... 10

*Steines v. Westgate Palace, L.L.C.*,
113 F.4th 1335 (11th Cir. 2024) .......... 17

*Struiksma v. Ocwen Loan Servicing, LLC*,
66 Cal. App. 5th 546 (2021) .......... 3

*Tamplenizza v. Josephthal & Co.*,
32 F. Supp. 2d 702 (S.D.N.Y. 1999) .......... 17

*Veale v. Citibank, F.S.B.*,
85 F.3d 577 (11th Cir. 1996) .......... 9

*Vega v. First Fed. Sav. & Loan Ass'n of Detroit*,
622 F.2d 918 (6th Cir. 1980) .......... 10, 11

*Vickery v. Empower Fin., Inc.*,
2025 WL 2841686 (N.D. Cal. Oct. 7, 2025) .......... 17

*Viernes v. Exec. Mortg., Inc.*,
372 F. Supp. 2d 576 (D. Haw. 2004) .......... 3

*White v. Diamond Motors, Inc.*,
962 F. Supp. 867 (M.D. La. 1997) .......... 7

*Wojcik v. Courtesy Auto Sales, Inc.*,
2002 WL 31663298 (D. Neb. Nov. 25, 2002) .......... 3

*Zawikowski v. Beneficial Nat'l Bank*,
No. 1:98-cv-02178 (N.D. Ill. Feb 27, 2004) .......... 3

**Statutes**

10 U.S.C. § 987 .......... 2, 5, 6, 11, 13, 14

15 U.S.C. § 1602(g) .......... 4

Cal. Civ. Code. § 1641 .......... 15

**Regulations**

12 C.F.R. § 1026.2(a)(17)(i) .......... 2, 4

12 C.F.R. § 1026.4(a) .......... 7, 8, 9, 10, 11

12 C.F.R. § 1026.17(d) .......... 5

32 C.F.R. § 232.3 .......... 2, 6

32 C.F.R. § 232.4(c)(1) .......... 11, 12

32 C.F.R. § 232.6(a) .......... 10

32 C.F.R. § 232.8(e)(1) .......... 14

*Truth in Lending (Regulation Z); Non-Application to Earned Wage Access Products*, 90 Fed. Reg. 60,069 (Dec. 23, 2025) .......... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's opposition further confirms what the Loan documents already show: Intuit, Credit Karma, Green Dot, SBTPG, and MVB Bank (collectively, the "Non-Creditor Defendants") are not creditors with respect to the Loan and therefore cannot be liable under the MLA. Yet Plaintiff seeks to impose MLA liability on them based on a loan from FCB that carried no interest or loan fees. Plaintiff does not dispute that he borrowed the same amount he repaid, and he has now abandoned his theory that repaying the Loan principal itself was a "finance charge" that pushed his MAPR above 36%. Opp. at 34–35. What remains is a lawsuit over a 0% interest loan based on TurboTax fees that every paying customer pays regardless of whether they obtain a Loan and other contingent fees unrelated to the extension of credit, which Plaintiff does not even allege he paid. Plaintiff's claims that Defendants violated the MLA by processing his refund to repay the 0% interest loan and utilizing an arbitration provision also make no sense. The MLA does not apply here, but even if it did, its implementing regulations expressly permit the repayment mechanism Plaintiff challenges, and no defendant has moved to compel arbitration—the first paragraph of the Loan agreement expressly excludes those subject to the MLA from arbitration in bold and all caps.

Rather than confront these defects, the opposition repeatedly retreats to the refrain that Plaintiff's claims cannot be resolved on the pleadings. But every document that matters is before the Court, incorporated into the Complaint by Plaintiff's own allegations. And all of the issues raised in this motion are legal ones that are appropriate for adjudication on a motion to dismiss. Plaintiff is not entitled to discovery when he cannot plead a plausible claim for relief.

The MLA protects servicemembers and their families from predatory credit extended by creditors. It is not designed to block them from consumer-friendly offerings, let alone sweep a zero-fee, zero-interest loan into its statutory-damages

dragnet. The Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. The MLA claims fail against the Non-Creditor Defendants because only creditors can be liable under the MLA.

The MLA only applies to creditors. 10 U.S.C. § 987. Indeed, each of the subsections of the MLA upon which Plaintiff's claims are based—subsections 987(b) and (e)—reiterates that it applies only to "creditor[s]." Plaintiff admits, and the Loan documents show, that FCB extended the Loan here. Opp. at 5. The other defendants are therefore not creditors.[1] Plaintiff nevertheless attempts to stretch the MLA beyond its statutory language. He argues that Intuit and Credit Karma qualify as "creditors" under the MLA because they allegedly "'market and facilitate' the Loan through the TurboTax platform," and because borrowers are only eligible for the Loan if they use TurboTax. Opp. at 19. Plaintiff further argues that Green Dot and SBTPG qualify as creditors because they allegedly exercise "functional control" over the Loan's repayment mechanism, though he failed to allege any such facts in his Complaint. *Id*. at 24–26. Lastly, he argues MVB is a creditor because the funds FCB loaned were put in an MVB debit account. Opp. at 23. But none of those alleged actions makes someone a creditor. The MLA defines a creditor by incorporating TILA's Regulation Z. 32 C.F.R. § 232.3(i)(3). Regulation Z, in turn, defines "creditor" to mean a person who (1) "regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment)," **and** (2) "to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract." 12 C.F.R. § 1026.2(a)(17)(i).

[1] To be clear, even FCB is not subject to the MLA because, as FCB explains in its brief, the Loan does not involve a "finance charge," let alone one that would exceed the MLA's limitations. So Plaintiffs' attempt to apply the MLA to entities that did not even make the loan is doubly flawed: Those entities are not creditors, and there is no finance charge.

Plaintiff does not plausibly allege that the Non-Creditor Defendants satisfy these requirements because he does not (and cannot) allege any facts showing that they "regularly extend[] consumer credit." To the contrary, Plaintiff alleges that FCB made the Loan. Compl. ¶¶ 37, 90. Equally fatal, Plaintiff does not plausibly allege that the Loan is "initially payable" to any of the Non-Creditor Defendants. The FCB agreement makes clear the Loan is payable to FCB. Dkt. 31-3 (Brock Decl.) at B-1. Accordingly, as a matter of law, Plaintiff has not plausibly alleged that any of the Non-Creditor Defendants is a "creditor" with respect to the Loan. Courts have consistently held that a party is not a creditor under TILA, which the MLA's definition incorporates, if the party is not the entity that loans the money and to whom the loan is initially payable, even if it has some involvement in the loan. *E.g.*, *Struiksma v. Ocwen Loan Servicing, LLC*, 66 Cal. App. 5th 546, 558 (2021) (sustaining demurrer where defendants were not TILA creditors because they were not "the person to whom the debt . . . is *initially* payable").

Plaintiff argues that the cases Defendants cited for the proposition that a party is not a creditor under the MLA if it did not loan money to the plaintiff do not apply here because they "involved entities with no comparable gatekeeping role." Opp. at 21. But "gatekeeping" is irrelevant to TILA's definition of "creditor." Rather, the touchstone—consistent with the statutory language—is whether the defendant "regularly extend[ed] consumer credit" and was "the person to whom the debt . . . [was] initially payable." *Wojcik v. Courtesy Auto Sales, Inc.*, 2002 WL 31663298, at *7 (D. Neb. Nov. 25, 2002); *see also Ridha v. Mortg. Elec. Registration Sys., Inc.*, 2010 WL 4867416, at *4 (E.D. Mich. Nov. 23, 2010) (focusing on which defendant "originat[ed] the loan"); *Viernes v. Executive Mortg., Inc.*, 372 F. Supp. 2d 576, 580-83 (D. Haw. 2004) (collecting cases). Further, in *Zawikowski v. Beneficial National Bank*, the court held that H&R Block was not a creditor under the statutory language despite its involvement in negotiating and arranging a refund-advance loan provided

by a bank in connection with H&R Block's tax-filing service. No. 1:98-cv-02178, Dkt. 934 (N.D. Ill. Feb 27, 2004) (Dkt. 31-9). Since none of the defendants in these cases originated the loan or were the entities to whom the debt was initially payable, they were not creditors as a matter of law. The same is true of the Non-Creditor Defendants here.

Plaintiff cites *JTH Tax* and *Hewlett* for the proposition that an entity can be a creditor under the MLA even if it does not make the challenged loan. Opp. at 20–21. Plaintiff's reliance on these cases is misplaced. *JTH Tax* did not involve an MLA claim, nor did it address whether the defendant was a creditor. *People v. JTH Tax, Inc.*, 212 Cal. App. 4th 1219, 1228–29 (2013). The analysis instead focused on whether a handling fee was a finance charge—a separate question with no relevance here, given that no such fee is at issue. *Id.* And, in *Hewlett*, a nonprecedential, unpublished Superior Court decision, the issue was whether an entity was "merely a dummy" lender, not the "true lender," under a California usury law not at issue here. *Opportunity Fin., LLC v. Hewlett*, No. 22STCV08163, Statement of Decision at 16 (Cal. Super. Ct. May 19, 2026). Plaintiff argues that "whether a program participant is engaged in the business of extending consumer credit is the same inquiry run under the true-lender rubric." Opp. at 21. But under TILA and the MLA, a creditor is statutorily limited to lenders that make loans and to which payment is initially payable. 15 U.S.C. § 1602(g); 12 C.F.R. § 1026.2(a)(17)(i). This Court should reject Plaintiffs' invitation to rewrite statutory language. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) ("it is never our job to rewrite a constitutionally valid statutory text"). Plaintiff's argument that anyone in any way tangentially involved with a loan is a creditor is wrong and finds no support in the law.

Unable to avoid the clear language of Regulation Z, Plaintiff makes a number of other arguments that also fail. First, he notes that an "assignee" of a creditor may be liable under the MLA. Opp. at 19, 21–22. That is irrelevant because the

Complaint alleges no assignment. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") In a footnote, Plaintiff suggests that Intuit may have a "participating interest" in the Loan. Opp. at 22 n.1.[2] But that is nowhere alleged in the Complaint, and "allegations made outside of the complaint may not be considered" on a Rule 12(b)(6) motion to dismiss. *Schneider*, 151 F.3d at 1197 n.1. In any event, a mere financial participating interest is not an assignment (*i.e.*, assuming all legal obligations of the lender), which is what the MLA requires. *See FDIC v. Ashmore*, 698 F. App'x 286, 287–88 (6th Cir. 2017) (distinguishing between the two).

Second, Plaintiff argues that "Regulation Z expressly contemplates transactions that involve multiple creditors" (Opp. at 21), but the section of Regulation Z Plaintiff cites merely governs disclosures when a transaction already involves multiple creditors; it does not expand the definition of "creditor." *See* 12 C.F.R. § 1026.17(d). And this is neither here nor there because the Non-Creditor Defendants are not creditors; FCB made the Loan here.

Third, Plaintiff argues that the Non-Creditor Defendants may be liable even if they are not creditors or assignees. Opp. at 22. But that is wrong. The MLA applies only to a "creditor who extends consumer credit to a covered member of the armed forces or a dependent of such a member," 10 U.S.C. § 987(a), and each of the subsections of the MLA upon which Plaintiff's claims are based—subsections 987(b) and (e)—specifically states that it applies only to "creditor[s]." The MLA's remedies section must be read in light of the statute's framework and limitations.

Fourth, Plaintiff repeatedly argues that creditor status cannot be resolved on

---

[2] Defendants object to Plaintiff's Request for Judicial Notice. The material Plaintiff raises was not referenced in the Complaint and therefore may not be considered. *Schneider*, 151 F.3d at 1197 n.1. In any event, it would be irrelevant for the reasons stated above.

the pleadings, but that is also incorrect. Plaintiff has expressly pleaded in the Complaint that FCB originated the Loan (Compl. ¶¶ 37, 90), and has failed to plausibly allege any facts that would demonstrate that the Non-Creditor Defendants also originated the Loan, were the parties to whom the debt was initially payable, or became FCB's assignees on the Loan. Thus, the Complaint itself demonstrates that none of the other Defendants are creditors. Because the MLA applies only to creditors, Plaintiff's claims against the Non-Creditor Defendants all fail as a matter of law and should be dismissed without leave to amend.

**B. Plaintiff has not plausibly alleged that the MLA applies or that the Loan violated its 36% MAPR cap.**

There is no dispute that the MLA applies only if the transaction constitutes "consumer credit" to a covered borrower. 10 U.S.C. § 987(b). Consumer credit is credit that is either "(i) [s]ubject to a finance charge; or (ii) [p]ayable by a written agreement in more than four installments." 32 C.F.R. § 232.3(f)(1). Plaintiff here repaid exactly what he borrowed in a *single* payment through his tax refund, not more than four installments. *See* Opp. at 13–14. Accordingly, Plaintiff must plausibly allege the Loan was subject to a "finance charge." He cannot do so.

In his complaint, Plaintiff incorrectly suggests that Loan recipients are supposedly subjected to four potential "finance charges," in the form of (1) repayment of the Loan principal, (2) the fee for the TurboTax product, (3) out-of-network ATM fees, and (4) contingent fees that SBTPG may charge when there are unexpected issues with the processing of the borrower's refund. But Plaintiff's opposition brief disclaims the first theory (Opp. at 34–35) and glosses over the second, and Plaintiff does not allege (or assert in his brief) that he paid the fees in the third and fourth categories. A review of the governing agreements under controlling case law demonstrates that none of these remaining categories of purported "finance charges" are properly included in the MAPR. Plaintiff repeatedly requests that the Court not analyze these fees independently and instead tries to treat them as an

amorphous collection of fees that require discovery. *See* Opp. at 14–16. But he can only meet the pleading standard by plausibly alleging that his Loan was subjected to specific finance charges that caused the MAPR to exceed 36%, and his attempt to divert the Court's attention from the actual elements he challenges as finance charges only underscores that he cannot meet the standard.

**1. The TurboTax fee is not a finance charge and does not belong in the MAPR.**

The fee for the TurboTax product is not a finance charge because it is not "incident to or a condition of the extension of credit," 12 C.F.R. § 1026.4(a); it has nothing to do with the extension of credit through the Loan. It is instead tied to the customer's use of the TurboTax product. There is no dispute that all customers who use paid TurboTax products pay for those products *regardless of whether they utilize the Loan*. Dkt. 31-1 ¶ 4. And, to the extent Plaintiff opted to have his TurboTax fees paid through his refund, that was simply a convenient option he decided to use. The deduction of those fees has nothing to do with the Loan, and customers are not required to have their TurboTax fees deducted from their refunds through the refund processing service to obtain the Loan. Dkt. 31-1 ¶ 4; Dkt. 31-6 at E-1. Plaintiff does not allege otherwise and that is fatal.

Plaintiff argues that the fee is "incident to" the extension of credit, and is thus a finance charge, because he "incurred [it] as part of the transaction through which he obtained the Loan." Opp. at 15–16. But the Supreme Court explained in *Household Credit Services, Inc. v. Pfennig*, 541 U.S. 232 (2004), that the phrase "incident to" the extension of credit as used in TILA requires "some *necessary* connection" between the fee and the extension of credit. *Id.* at 240–41. There is no necessary connection between the fee for the TurboTax product and the Loan because all customers who pay for TurboTax are charged for their tax preparation regardless of whether they obtain a Loan. *See White v. Diamond Motors, Inc.*, 962 F. Supp. 867, 871 (M.D. La. 1997) (holding that a fee charged by a car dealership to handle

licensing and titling a vehicle—charged uniformly to cash and credit customers—was not a finance charge under TILA). The fees are not for the Loan, but rather for the tax preparation software, which has its own independent purpose and value separate from the Loan since tens of millions of Americans utilize it to prepare their taxes each year. Further, fees for the TurboTax product are not "finance charges" because they are "payable in a comparable cash transaction"—again, all paying customers pay for TurboTax, even if they do not get a Loan. 12 C.F.R. § 1026.4(a); *see also Huertas v. Foulke Mgmt. Corp.*, 2021 WL 5755081, at *2 (3d Cir. Dec. 3, 2021) (fees charged to both cash and credit customers are "not incident to the extension of credit and thus [are] not finance charges").[3]

### 2. Plaintiff lacks standing to challenge the contingent ATM and SBTPG fees and does not plausibly allege that they are finance charges.

As to the contingent ATM fees and SBTPG fees, Plaintiff still does not allege that he actually incurred them, so he has not plausibly alleged that he has standing or that he paid an MAPR of over 36%. He vaguely asserts in a footnote that it is a "reasonable inference" that he incurred "at least some of those charges" (Opp. at 27–28 n.2), but there is no need for the Court to make inferences about things Plaintiff failed to allege. *See Schneider*, 151 F.3d at 1197 n.1. A plaintiff does not have standing to challenge the lawfulness of a fee they did not pay, see *Richmond v. Home Partners Holdings LLC*, 2023 WL 2787221, at *4 (W.D. Wash. Apr. 5, 2023), and if Plaintiff's attorneys could have made that allegation consistent with their Rule 11 obligations, they would have done so. Nor does Plaintiff allege—because he cannot—that Intuit or Credit Karma impose ATM fees or the SBTPG fees.

Plaintiff's claim also fails because these fees are not finance charges to be

---

[3] Plaintiff's reference to *Quildon v. Intuit, Inc.*, 2012 WL 1902021 (N.D. Cal. May 25, 2012), as supposedly showing "a documented history of alleged excessive finance charges" (Opp. at 15) is nonsense. That case involved an entirely different question—jurisdiction—and there was no finding of liability in that case; in the decision Plaintiff cites, the trial court merely remanded the action to state court. *Id.* at *5.

included in the MAPR. Starting with the ATM fees, Plaintiff does not respond to Intuit's argument and case law that fees for the use of an out-of-network ATM do not qualify as finance charges because they are not "imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a). The fees are related to the customer's *later* potential use of the debit account at an out-of-network ATM, not approval for the earlier underlying Loan. They are not "incident to or a condition of the extension of credit" because the customer *has already received the Loan*. Nor are the potential ATM fees "imposed" by the "creditor" FCB, since MVB charges them and the customers need not incur these fees. Customers can unilaterally choose to avoid paying those fees entirely by paying with their debit cards or using in-network ATMs. *See* Dkt. 31 at 18–19; *see also Veale v. Citibank, F.S.B.*, 85 F.3d 577, 579 (11th Cir. 1996) (holding that an avoidable Federal Express fee was not a finance charge; it was for plaintiff's convenience and not "an incident to the extension of credit").

Plaintiff suggests that his ability to avoid the fee is irrelevant to the inquiry, based on inapposite earned-wage-advance ("EWA") cases assessing expedited delivery fees. (Opp. at 12–16.) He is wrong—those cases examine fees that customers must pay if they wish to receive funds rapidly, which is not at issue here. Further, the CFPB recently confirmed that expedited-delivery fees generally are not finance charges when consumers may obtain the same funds through a free alternative, because such optional fees are not "directly or indirectly imposed" by the provider. *Truth in Lending (Regulation Z); Non-Application to Earned Wage Access Products*, 90 Fed. Reg. 60,069, 60,075 (Dec. 23, 2025) (CFPB advisory opinion). Indeed, the CFPB also criticized the *Orubo* line of EWA case Plaintiff cites (Opp. at 17) for failing to consider this issue and improperly relying on a flawed 2024 CFPB proposed interpretive rule that the CFPB later rejected, a fact Plaintiff ignores. *Id*. at 60076 n.81. Nor does Plaintiff respond to Intuit's argument that fees for the use of

an out-of-network ATM are not finance charges for the additional reason that they are payable in a comparable cash transaction, or dispute that people pay out-of-network ATM fees regardless of whether they have received a Loan. *See* 12 C.F.R. § 1026.4(a); Dk. 31 at 19.

If Plaintiff were correct that the MAPR includes voluntary out-of-network ATM fees that may be incurred months or years after a loan was made, that would lead to absurd results. Plaintiff could agree to a loan that complied with the MLA when it was made, choose to run up entirely avoidable out-of-network ATM fees that are not imposed as a condition of the extension of credit, and argue that the imposition of those fees made the loan retroactively illegal under the MLA. That would make it impossible for a lender to determine what the MAPR is and to make proper disclosures, which are required "before or at the time the borrower becomes obligated on the transaction." 32 C.F.R. § 232.6(a). But that is not the law. Instead, courts "generally do not look to events after the consummation of the transaction when evaluating the adequacy and accuracy of TILA disclosures." *Stein v. TitleMax of Ga., Inc.*, 819 F. App'x 809, 812 (11th Cir. 2020). The "inquiry focuses on the time the transaction is consummated." *Id.* at 811. A fee that is incurred "well after the loan had been initiated" is "in no way incident to the extension of credit." *Pechinski v. Astoria Fed. Sav. & Loan Ass'n*, 345 F.3d 78, 82 (2d Cir. 2003).

Plaintiff faces the same fatal problem with the contingent SBTPG fees that may be charged if a problem with the tax refund later develops. Plaintiff acknowledges that courts often do not treat contingent fees as finance charges, but argues that this rule only applies to fees that are "triggered by a borrower's own default or shortfall." Opp. at 33. That is wrong. As explained in Defendants' motion to dismiss, "[t]he basis of the distinction between a finance charge and a late payment charge is that one represents an actual unavoidable charge while the other one simply represents a potential charge." *Vega v. First Fed. Sav. & Loan Ass'n of Detroit*, 622

F.2d 918, 922–23 (6th Cir. 1980). "If the finance charge contained in a disclosure statement reflected both the actual finance charge and a potential charge such as the one in this case, a consumer would not be informed of the amount that he was required to pay." *Id*. at 922. And Plaintiff does not respond to Intuit's argument that these fees aren't finance charges because they apply to all TurboTax customers for whom Green Dot Bank establishes temporary deposit accounts—regardless of whether *those customers* sign up for a Loan—and are therefore "payable in a comparable cash transaction." *See* 12 C.F.R. § 1026.4(a); Dkt. 31 at 21–22. That alone is dispositive.

It's clear that the contingent fees here—which Plaintiff does not even allege he paid—are not finance charges.

**3. There is no other basis for including any fees in the MAPR.**

Plaintiff vaguely argues that some fees may be included in the MAPR even if they do not qualify as finance charges because they are "cost element[s]" "associated with the extension of credit." Opp. at 18 (quoting 10 U.S.C. § 987(i)(3)). But Plaintiff never explains why the fees at issue here qualify. The MLA's implementing regulations, which Plaintiff agrees govern the interpretation of the MLA (*see* Opp. at 35), lay out three categories of fees that must be included in the MAPR: (1) "[a]ny credit insurance premium or fee, any charge for single premium credit insurance, any fee for a debt cancellation contract, or any fee for a debt suspension agreement"; (2) "[a]ny fee for a credit-related ancillary product sold in connection with the credit transaction for closed-end credit or an account for open-end credit"; and (3) "[f]inance charges associated with the consumer credit," "[a]ny application fee charged to a covered borrower who applies for consumer credit," and "[a]ny fee imposed for participation in any plan or arrangement for consumer credit." 32 C.F.R. § 232.4(c)(1)(i)–(iii); *see* Dkt. 31 at 14–15. The implementing regulation does not allow an open-ended category of "cost elements" associated with the extension of

credit.

Plaintiff baldly asserts that the fees at issue must be included in the MAPR because they constitute "fee[s] for a credit-related ancillary product sold in connection with the credit transaction" or fees "imposed for participation in any plan or arrangement for consumer credit." Opp. at 32–33, 35–36. But Plaintiff does nothing to explain why fees for the TurboTax product or the contingent fees associated with issues with processing the refund fall into either of those categories. Intuit's tax preparation product fees are not related to a "plan or arrangement for consumer credit" or a "credit-related ancillary product" because they are for tax preparation, not the Loan. *See* Mot. at 18. TurboTax is a widely used tax-preparation software in the United States.

Plaintiff suggests that the contingent out-of-network ATM fees are fees for a credit-related ancillary product sold in connection with the credit transaction because the "debit card" associated with borrowers' Credit Karma debit accounts is "the physical key to a mandatory account holding the Loan proceeds." Opp. at 32. But that is nonsensical. A deposit account and its associated debit card are payment/depository products, not "credit-related ancillary products." 32 C.F.R. § 232.4(c)(1)(ii). Their function is to hold and permit access to funds, not to impact or alter the borrower's credit obligation. The deposit account also is not "sold in connection with the credit transaction," *id.*—it is not sold at all. And any charges for using an out-of-network ATM are not "credit-related"—whether Plaintiff chooses to use an out-of-network ATM and incurs a fee after obtaining his Loan (which he has not alleged) has nothing to do with the Loan he has already received. Also, the fact that ATM withdrawal fees are addressed by a different statute—the Electronic Funds Transfer Act and Regulation E, 12 C.F.R. § 1005.18(b)(2)(iii)—further confirms that those fees have no relevance to TILA or the MLA.

Therefore, Plaintiff has not alleged and cannot allege that he was charged fees

in connection with the loan.

### C. Plaintiff has not plausibly alleged a violation of the MLA's account-access provision.

Section 987(e)(5) of the MLA prohibits "any creditor" from extending consumer credit that "uses a check or other method of access to a deposit, savings, or other financial account maintained by the borrower" as security for the obligation. 10 U.S.C. § 987(e)(5). Because the Non-Creditor Defendants are not creditors, *see supra* Part A, and because the Loan is not consumer credit, *see supra* Part B, the MLA does not apply. Plaintiff's account-access claim therefore fails at the threshold, and the Court need go no further.

As to Intuit, Credit Karma, FCB, and MVB, the claim fails for a second, independent reason that Plaintiff's opposition never confronts: Those defendants do not access any relevant account at all. Green Dot Bank establishes the temporary deposit account that receives the borrower's refund, and SBTPG, consistent with its agreement with the plaintiff, processes the refund and makes the authorized deductions from that account. Dkt. 31 at 22; Dkt. 31-6 at 1–2. Plaintiff's own complaint alleges as much: he was "required to authorize Green Dot Bank to establish a temporary deposit account," and he authorized "[SBTPG] to deduct from this temporary deposit account" the Loan amount and associated fees. Compl. ¶¶ 96–98. Nowhere in his opposition does Plaintiff identify any allegation that Intuit, Credit Karma, FCB, or MVB used any "method of access" to that account—indeed, the account-access section of his brief does not mention them performing any function with respect to the Green Dot account. *See* Opp. at 39–41.

Third, Plaintiff has failed to plausibly allege that the temporary account was "maintained by the borrower" as required for a claim under Section 987(e)(5). *See* Dkt. 33-1 at 11. Plaintiff argues an account was "opened to receive Plaintiff's own incoming tax refund" (Opp. at 40–41) but he does not allege that he opened, directed, or could draw on the account. He alleges the opposite: Green Dot established the

account "for the sole purpose of receiving his federal tax refund," and SBTPG deducted the Loan amount and fees from the account "before any remaining refund proceeds were disbursed to Plaintiff." Compl. ¶¶ 96–97. An account the borrower cannot access is not a "financial account maintained by the borrower." 10 U.S.C. § 987(e)(5). Plaintiff's analogy to an ordinary checking account (Opp. at 41) proves the point—a depositor maintains an ordinary checking account precisely because she controls it and may draw on it at will, features Plaintiff's complaint alleges this account lacked. Thus, even apart from their lack of creditor status, Plaintiff does not plausibly allege that Green Dot or SBTPG used an account "maintained by the borrower" within the meaning of Section 987(e)(5).

In any event, even if the MLA could apply here, the MLA's implementing regulations expressly permit the repayment mechanism Plaintiff describes. 32 C.F.R. § 232.8(e) provides that a creditor may "require an electronic fund transfer to repay a consumer credit transaction" and may take "a security interest in funds deposited after the extension of credit in an account established in connection with the consumer credit transaction." 32 C.F.R. § 232.8(e)(1), (e)(3); *see* Mot. at 22–23. Plaintiff has no response besides to say that a creditor still must comply with the MAPR requirements, but as addressed above he has not plausibly alleged a violation of the MAPR cap, let alone against the Non-Creditor Defendants who are not subject to the MLA.

**D. Plaintiff has not plausibly alleged a violation of the MLA's arbitration provisions.**

Like the account-access provision, the MLA's arbitration provisions regulate only creditors: Section 987(e)(3) makes it unlawful for a "creditor" to "extend consumer credit" to a covered borrower under an agreement that "requires the borrower to submit to arbitration or imposes onerous legal notice provisions in the case of a dispute," and Section 987(e)(4) likewise prohibits a "creditor" from "demand[ing] unreasonable notice from the borrower as a condition for legal action."

10 U.S.C. § 987(e)(3), (e)(4). Because the Non-Creditor Defendants are not creditors (*see supra* Part A), Count III fails against them at the outset. And even if they were, the MLA still does not apply because Plaintiff fails to allege the Loan is consumer credit subject to a finance charge. *See supra* Part B. Plaintiff's reliance on the separate refund-processing agreement does not cure those defects. *See* Opp. at 46. An arbitration provision in a processing agreement does not itself make Green Dot or SBTPG creditors under the MLA. And even if they were, arbitration agreements Plaintiff entered with the other Defendants have no bearing on Intuit and Credit Karma. (Opp. at 42–43). Plaintiff's attempt to sweep in the Credit Karma Money Spend account agreement also fails because that agreement governs the debit account, not the Loan, and MVB and Credit Karma are not creditors.

Setting aside these glaring defects, Plaintiff's claim fails for two additional, independent reasons. *First,* the Loan Agreement is the agreement that covers the Loan transaction here, and it expressly disclaims application to covered borrowers under the MLA. Plaintiff does not dispute what the Loan Agreement says: Its first paragraph provides, in bold, all-capital letters, that the borrower must arbitrate his claims "UNLESS YOU ARE A COVERED BORROWER UNDER THE MILITARY LENDING ACT." Ex. 31-3 at B-1; Dkt. 31 at 24. He argues that the carve-out is insufficient because it appears only "once, in the header notice on page one," while Section R—the arbitration provision—separately excludes residents of four states without repeating the covered-borrower exclusion. Opp. at 43. That is not how contracts are read. A term stated once in an integrated agreement binds the parties without being repeated in every section it touches. Cal. Civ. Code, § 1641 ("[t]he whole of a contract is to be taken together, so as to give effect to every part"); *City of Atascadero v. Merrill Lynch*, 68 Cal. App. 4th 445, 473 (1998) (similar).

Plaintiff's related suggestion that the carve-out was insufficiently prominent fares no better. He invokes the Department of Defense's concern that a creditor

"might minimize the prominence" of MLA-related statements "amidst other . . . contract documents." Opp. at 43–44 (quoting 80 Fed. Reg. 43560, 43586–87). That concern is inapplicable here: The exclusion appears in bold, all-capital letters in the first paragraph of the Loan agreement—the most conspicuous placement possible.

Plaintiff's last refuge in the Loan Agreement is a theory that appears nowhere in his complaint: that the MLA exclusion on page 1 excludes covered borrowers only from the arbitration agreement and class waiver, leaving Section R's "Mutual Dispute Resolution" and "Informal Resolution" paragraphs—which ask a claimant to describe his claim in writing and allow FCB thirty days to resolve it—applicable to covered borrowers. He insists that requiring covered borrowers to engage in informal dispute resolution violates the MLA because it constitutes an "onerous legal notice provision[]" under Section 987(e)(3) or an "unreasonable notice" demand under Section 987(e)(4). But his attempt to dissect the arbitration agreement (Section R) into non-intuitive subsections and preclude full application of the MLA carve-out makes no sense. The agreement clearly states that borrowers covered by the MLA are exempt from the "arbitration provision"—i.e., the entirety of Section R, including the dispute resolution paragraphs.

In any event, Plaintiff cites no authority holding that an informal pre-suit resolution process of this kind is an "onerous legal notice provision[]" under Section 987(e)(3) or an "unreasonable notice" demand under Section 987(e)(4). Courts routinely hold that "dispute resolution procedures are not onerous." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023); *see also In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 867 (N.D. Cal. 2024) ("Plaintiff does not explain why a 30-day time period for responding to [informal] complaints . . . is onerous beyond reasonable expectations."). And Plaintiff's focus on the notice paragraph only underscores that he has suffered no injury: He does not allege that he ever presented a claim to FCB, was delayed by the informal-resolution process,

or was deterred from suing—indeed, he filed this lawsuit.

*Second*, Plaintiff has no answer to the dispositive point that the MLA does not create a cause of action for the mere inclusion of an arbitration clause that no one has invoked or sought to enforce. Every authority he marshals arose on a motion to compel arbitration and addressed only enforceability—whether a court may send a covered borrower's claims to arbitration. *See Steines v. Westgate Palace, L.L.C.*, 113 F.4th 1335, 1343–45 (11th Cir. 2024); *Espin v. Citibank, N.A.*, 126 F.4th 1010, 1019 (4th Cir. 2025); *Vickery v. Empower Fin., Inc.,* 2025 WL 2841686 at *2 (N.D. Cal. Oct. 7, 2025). None holds that the presence of an arbitration clause—much less one that by its own terms does not apply to the plaintiff, and that no defendant has invoked—gives rise to a claim for statutory damages under Section 987(f)(5). Meanwhile, Plaintiff simply ignores the authorities Defendants previously cited. He says nothing about *Bowen v. First Family Financial Services, Inc.*, 233 F.3d 1331, 1339 (11th Cir. 2000), or *Tamplenizza v. Josephthal & Co*., 32 F. Supp. 2d 702, 704 (S.D.N.Y. 1999), both of which hold that a plaintiff may not challenge an arbitration provision that has never been enforced against him. *See* Mot. at 25. Therefore, Plaintiff's third cause of action should also be dismissed without leave to amend.

## III. CONCLUSION

For the foregoing reasons, Intuit and Credit Karma respectfully request that the Court dismiss the Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated: August 31, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Austin Schwing*
Austin Schwing

*Attorneys for Defendants Intuit Inc., Intuit TT Offerings Inc., and CK Progress, Inc.*