Kevin S. Asfour (SBN 228993)
Kevin.Asfour@klgates.com
Jacob R. Winningham (SBN 357987)
Jacob.Winningham@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: (310) 552-5000
Facsimile: (310) 552-5001

Attorneys for Defendant
FIRST CENTURY BANK, N.A.

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZACHARY BOSTICK, individually and on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>INTUIT, INC. d/b/a TURBOTAX, INTUIT TT OFFERINGS, INC., CK PROGRESS, INC. d/b/a CREDIT KARMA LLC, MVB BANK, INC., FIRST CENTURY BANK, N.A., SANTA BARBARA TAX PRODUCTS GROUP, LLC, and GREEN DOT BANK,<br><br>*Defendants*. | Case No. 3:26-cv-01444-H-VET<br><br>**DEFENDANT FIRST CENTURY BANK, N.A.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: September 14, 2026<br>Time: 10:30 am<br>Judge: Hon. Marilyn L. Huff<br>Courtroom: 12A |

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The MLA Does Not Apply Because The Loan is Not Subject to a Finance Charge and is Not Payable In More Than Four Installments. .......... 2

1. The Loan is Not Payable in More Than Four Installments.......... 2

2. The Loan is Not Subject to a Finance Charge.......... 3

B. Even If The MLA Applies, Plaintiff's MAPR Calculation Includes Fees That Should Not Be Included in The MAPR Calculation. .......... 5

C. Count I Fails Because The Alleged Repayment Arrangement Is Permitted And Was Not Performed by FCB. .......... 6

D. Count III Fails Because The Loan Agreement Expressly Excludes MLA-Covered Borrowers From Arbitration. .......... 8

E. Leave to Amend Should Be Denied As Amendment Would Be Futile. .......... 9

III. CONCLUSION. .......... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antar v. Lexington Nat'l Ins. Corp.*,
No. 23-cv-1685-BAS-BLM, 2024 WL 1684895 (S.D. Cal. Apr. 18, 2024)........................ 3, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................ 3

*Bowen v. First Family Fin. Servs., Inc.*,
233 F.3d 1331 (11th Cir. 2000)........................................................................................ 8

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2006)......................................................................................... 3

*Household Credit Servs., Inc. v. Pfenning*,
541 U.S. 232 (2004)........................................................................................................ 5

*Huertas v. Foulke Mgmt. Corp.*,
No. 20-3443, 2021 WL 5755081 (3d Cir. Dec. 3, 2021)................................................... 6

*Lucero v. Countrywide Bank N.A.*,
No. 09-cv-01742 BTM (BLM), 2010 WL 1880649 (S.D. Cal. May 10, 2010)....................... 7

*Orubo v. Activehours, Inc.*,
780 F.Supp.3d 927 (N.D. Cal. 2025)................................................................................ 4

*Poulin v. Balise Auto Sales, Inc.*,
647 F.3d 36 (2d Cir. 2011)............................................................................................... 6

*Ramirez v. Activehours, Inc.*,
828 F.Supp.3d 1040 (N.D. Cal. 2026).............................................................................. 4

*Revell v. Grant Money, LLC*,
808 F.Supp.3d 1036 (N.D. Cal. 2025).............................................................................. 4

*Russell v. Dave Inc.*,
812 F.Supp.3d 998 (C.D. Cal. 2025)................................................................................ 4

*Tamplenizza v. Josephthal & Co.*,
32 F.Supp.2d 702 (S.D.N.Y. 1999).................................................................................. 8

*Troglia v. Cerritos Community College District*,
Case No. 2:25-cv-03161-DOC-KES, 2025 WL 4059932 (C.D. Cal. Dec. 22, 2025)............. 4

*Zamora v. Solar*,
Case No. 2:16-cv-01260-ODW-KS, 2016 WL 3512439 (C.D. Cal. June 27, 2016)................ 9

**Statutes**

10 U.S.C. § 987(b) .......... 2

**Other Authorities**

12 C.F.R. § 1026.4(a) .......... 6

12 C.F.R. § 1026, cmt. 4(a)-1 (2011) .......... 6

32 C.F.R. § 232.3(f)(1) .......... 3

32 C.F.R. § 232.4(c)(1)(ii) .......... 6

32 C.F.R. § 232.8(e) .......... 7

32 C.F.R. § 232.8(e)(1) .......... 7

32 C.F.R. § 232.8(e)(3) .......... 7

Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 81 FR 58840-01, 2016 WL 4474980 (Aug. 26, 2016) .......... 8

Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 82 FR 58739-01, 2017 WL 6368550 (Dec. 14, 2017) .......... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Zachary Bostick's ("Plaintiff" or "Bostick") Opposition (the "Opposition," Dkt. 52) confirms the fundamental defect in his claims against Defendant First Century Bank, N.A. ("FCB"): the FCB Refund Advance Loan Agreement (the "Loan Agreement") expressly and unambiguously states that the Refund Advance Loan (the "Loan") extended to Bostick carries "$0.00 in fees, charges, or points" and a "Finance Charge" of "0.00%," and is repaid in a single payment upon receipt of Plaintiff's tax refund. Rather than address that unambiguous contractual language, Plaintiff spends nearly forty pages arguing that the other Defendants'[1] fees—for TurboTax tax-preparation services, for contingent refund-processing events that are not alleged to have occurred, and for avoidable out-of-network ATM fees that are not alleged to have been incurred—are "finance charges" that should be aggregated into a single, transaction-wide MAPR calculation that ignores which entity may impose which charge and why. That approach cannot survive the plain text of the Military Lending Act ("MLA") or its implementing regulations, which condition finance charge status on a charge being imposed by, or at the direction of, the creditor whose credit is at issue, as a necessary incident to or a condition of that credit.

Plaintiff's Opposition rests its entire "consumer credit" and finance charge theories on two propositions: (1) that Refund Advance products are a "named category" of MLA-covered credit and are thus subject to the MLA regardless of a particular loan's actual terms; and (2) that virtually any fee anyone pays anywhere across multiple transactions and involving different parties to each transaction, at any time during or after the loan is issued, however collected and by whomever, and even if not required by FCB, becomes a finance charge imposed by FCB so long as it is "connected" to the

---

[1] FCB's co-Defendants are Intuit, Inc. d/b/a TurboTax ("Intuit"), Intuit TT Offerings, Inc., CK Progress, Inc. d/b/a Credit Karma LLC, MVB Bank, Inc. ("MVB"), Santa Barbara Tax Products Group, LLC, and Green Dot Bank (collectively, the "Defendants").

extension of credit. Both propositions collapse the required defendant-specific and charge-specific inquiry that this Court must undertake at the pleading stage and obfuscate the governing provisions of the MLA.

FCB's Motion should be granted for three independent reasons. First, the Loan itself—the only credit transaction to which FCB is a party—is not covered by the MLA because it is not subject to a finance charge and is not payable in more than four installments. Second, even if the Loan were covered by the MLA, none of the fees Plaintiff identifies are finance charges properly included in the MAPR calculation, and none of the fees (whether incurred or not) are attributable to FCB such that Count II fails to state a claim. Third, even if the MLA applied, Counts I and III fail on their own terms because (a) the account-access mechanism giving rise to Count I is permitted by law and no allegation is made with respect to any account access undertaken specifically by FCB, and (b) the Loan Agreement's express covered-borrower carve-out defeats Plaintiff's arbitration theory (and thus Count III) as to FCB. To be sure, the Opposition does not meaningfully engage with any of these points as they apply specifically to FCB. Instead, the Opposition (like the Complaint, Dkt. 1) improperly lumps all Defendants together in a form of impermissible shotgun pleading to mask each Defendant's responsible conduct. Given these defects, and for the reasons laid out below, and for the reasons set forth in Defendant Intuit Inc.'s Reply in Support of its Motion to Dismiss ("Intuit's Reply" or the "Intuit Reply", Dkt. 57), FCB's Motion to Dismiss should be granted and the Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. The MLA Does Not Apply Because The Loan is Not Subject to a Finance Charge and is Not Payable In More Than Four Installments.

*1. The Loan is Not Payable in More Than Four Installments.*

The Opposition's lengthy discussion of refund advance loans and the MLA sidesteps the dispositive analysis under the MLA—namely, the MLA applies only if the transaction constitutes "consumer credit," to a covered borrower, 10 U.S.C. § 987(b),

and "consumer credit" is credit that is either "(i) [s]ubject to a finance charge; or (ii) [p]ayable by a written agreement in more than four installments." 32 C.F.R. § 232.3(f)(1). The Loan meets neither test. When faced with those two requirements, the Opposition either improperly suggests the issue be deferred to a later stage of litigation or lumps all fees and all Defendants together to avoid identifying which (if any) fees or Defendants supposedly run afoul of the MLA. This approach is insufficient under the law and requires dismissal of the Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Gibson v. City of Portland*, 165 F.4th 1265, 1287-88 (9th Cir. 2006) (lumping allegations against "defendants" collectively insufficient to state a claim).

In any event, the Opposition appears to concede that the Loan is repaid in full in a single installment upon receipt of the tax refund. *See* Opp. at 13-14. Indeed, the plain text of the Loan Agreement clearly contemplates only a single payment. *See* FCB Loan Agreement at 1; *see also* Dkt. 32 at 7-9. Therefore, the MLA's "[p]ayable by a written agreement in more than four installments" prong is not satisfied.

*2. The Loan is Not Subject to a Finance Charge.*

Plaintiff does not and cannot plausibly allege that the Loan includes any finance charge. The Opposition ignores the Loan Agreement's plain language that "[n]o interest accrues on the outstanding principal balance of the Loan," that FCB "charge[s] $0.00 in fees, charges, or points in connection with the Loan," and that "[t]he Finance Charge for this Loan is 0.00%." FCB Loan Agreement at 1-2. Bostick does not dispute that these terms appear in the Agreement he signed, does not argue that the terms are ambiguous, and does not identify a single fee that FCB itself charged him.[2]

[2] Plaintiff's argument that the Court cannot now resolve the baseline "merits" question of whether the Loan is subject to a finance charge is a last-ditch effort to avoid the plain deficiencies of the Complaint. Those deficiencies are precisely the type of issue which is appropriate for a Motion to Dismiss, as Plaintiff's conclusory allegations cannot be credited, and the relevant issues are questions of law resolvable by a Motion to Dismiss. *See Antar v. Lexington Nat'l Ins. Corp.*, No. 23-cv-1685-BAS-BLM, 2024 WL 1684895, at *4 (S.D. Cal. Apr. 18, 2024) (granting motion to dismiss and noting that "[i]nterpretation of a contract is a purely legal question which is susceptible to a motion to dismiss") (internal quotation marks and citation omitted).

Instead, Plaintiff argues that FCB's "$0.00 in fees" disclosure "cannot resolve the finance-charge dispute at the pleading stage" because it "says nothing about the separately imposed" fees. Opp. at 36. Plaintiff attempts to ignore the language of the contracts and frame the issue as an "integrated transaction" to relocate the finance-charge inquiry away from FCB and onto the conduct of the other Defendants—entities that are not parties to the Loan Agreement, are not creditors under the MLA, whose fees FCB neither sets or collects, whose fees are not imposed as part of the credit provided by the FCB Loan Agreement, and whose fees include charges Plaintiff himself may incur through other Defendants based on actions within his control after the Loan is issued by FCB. Plaintiff's scattershot arguments regarding the MLA —including that RAL-style loans are named in Department of Defense ("DoD") regulations and that whether the Loan is subject to a finance charge cannot be resolved at this stage—do not change the fact that Bostick has failed to sufficiently plead that the Loan is subject to a finance charge or that he incurred any fees. *See Troglia v. Cerritos Community College District,* No. 2:25-cv-03161-DOC-KES, 2025 WL 4059932, at *4 (C.D. Cal. Dec. 22, 2025) ("When documents contain statements that contradict allegations in a complaint, the documents control") (quotation omitted).[3]

Plaintiff's reliance on "earned wage access" cases are distinguishable from the present facts. In each of those cases, the same defendant that extended the loan in question also imposed, set the amount of, and retained the fee imposed for the expedited issuance of the loan itself. *See, e.g., Russell v. Dave Inc.*, 812 F.Supp.3d 998, 1002-03 (C.D. Cal. 2025) ("express fee"); *Ramirez v. Activehours, Inc.*, 828 F.Supp.3d 1040, 1043-44 (N.D. Cal. 2026) ("lightning speed fee"); *Revell v. Grant Money, LLC*, 808 F.Supp.3d 1036, 1041 (N.D. Cal. 2025) ("Instant Delivery Fee"); *Orubo v. Activehours, Inc.*, 780 F.Supp.3d 927, 931 (N.D. Cal. 2025) ("lightning speed fee"). None of those

[3] Plaintiff's argument that "refund advance loans" are named in DoD regulations does not change the statutory and regulatory requirements of the MLA. Plaintiff cites no authority for the proposition that a mere "refund advance loan" label replaces the MLA's finance-charge or installment prongs.

cases involves, as is the case here, contingent fees charged by a separate defendant under a separate contract for a separate (optional) service, or fees that are incurred by the borrower after the loan is made. Nor does Plaintiff allege that he paid any fee to expedite Loan funds—which he plainly did not.

As explained in greater detail in Intuit's Reply, none of the fees at issue here are, as Plaintiff argues, "incident to the extension of credit." *See* Opp. at 15 (quoting *Russell*, 812 F.Supp.3d at 1008). The TurboTax preparation fee is not charged by FCB and would be charged to the customer regardless of whether she opted for a Loan. The contingent account fees, and the avoidable out-of-network ATM fee all correspond to services or costs that FCB does not charge, set, or collect, that are not necessary to FCB's extension of credit and not related to the extension of credit.[4] These fees are therefore not "incident to . . . the extension of credit" under the MLA. *See Household Credit Servs., Inc. v. Pfenning*, 541 U.S. 232, 240-241 (2004) (holding that the phrase "incident to" "implies some *necessary* connection between the antecedent [here, the finance charge] and its object [here, the extension of credit]" and further noting that "Congress did not contemplate that *all* charges made in connection with an open-end credit plan would be considered 'finance charges'") (emphasis in original). Plaintiff's obfuscation of the distinct roles each defendant plays is contrary to the language and intent of the MLA and should be rejected.

### B. Even If The MLA Applies, Plaintiff's MAPR Calculation Includes Fees That Should Not Be Included in The MAPR Calculation.

Lacking an actual finance charge on the Loan, Plaintiff's MAPR argument incorrectly construes the MAPR calculation as a single figure that combines all potential charges against all potential participants no matter when the charge is incurred or how it is incurred. This conception of the MAPR runs afoul of the MLA and its related regulations, which (in relevant part) limit the MAPR calculation to "[f]inance charges

[4] Plaintiff abandoned his theory that repaying the Loan balance itself was a "finance charge" that caused the MAPR to exceed 36%. *See* Opp. at 34–35.

associated with the consumer credit." 32 C.F.R. § 232.4(c)(1)(ii). As stated in detail in Intuit's Reply, the fees that Bostick includes in his MAPR calculation do not qualify as finance charges because they are not charged by FCB, are not set by FCB, are not collected by FCB, and are not necessary to FCB's extension of credit.[5] They are thus not imposed as a condition of or an incident to the extension of credit. *See* 12 C.F.R. § 1026.4(a). Indeed, if Bostick's argument is pushed to its limits, it would mean that even fees that a consumer never needs to incur unless they request the fee, or their actions trigger the fee, would be finance charges, and borrowers could manufacture a MAPR violation for every MLA loan. This is not the law.

Further, as stated in detail in Intuit's Reply, Bostick does not allege that individuals who obtained loans from FCB paid any more for the preparation of their tax returns or for the third-party contingent fees than similarly-situated customers who did not obtain the loans. Nor could he. The fees remain the same for all customers, regardless of whether credit is extended, and thus fall into the "comparable cash transaction" exclusion. *See Poulin v. Balise Auto Sales, Inc.*, 647 F.3d 36, 39 (2d Cir. 2011) (noting that a price increase charged to credit customers based solely on that credit customer status "triggers TILA's disclosure requirements") (citation and internal quotation marks omitted); *Huertas v. Foulke Mgmt. Corp.*, No. 20-3443, 2021 WL 5755081, at *2 (3d Cir. Dec. 3, 2021) (fees charged to both cash and credit customers are "not incident to the extension of credit and thus [are] not finance charge"). This is fatal to his claim. *See* 12 C.F.R. § 1026, cmt. 4(a)-1 (2011).

### C. <u>Count I Fails Because The Alleged Repayment Arrangement Is Permitted And Was Not Performed by FCB.</u>

Even if the MLA applies, Bostick's Count I fails because FCB did not access the account at issue, and because the account access at issue in Count I is permitted by the MLA. The governing regulations interpreting Section 987(e)(5) confirm that the

---

[5] Green Dot's contingent Return Item Fee and the Account Research and Processing Fee and the hypothetical ATM fees are not alleged to have even been paid by Bostick.

account access about which Bostick complains is lawful. *See* 32 C.F.R. § 232.8(e)(1), (e)(3). Indeed, the "regulatory safe harbor" describes the ***exact*** transfer that Bostick outlines in his Complaint. As described in FCB's Motion to Dismiss (Dkt. 32 at 9-10), customers who obtain a Loan agree to have their refunds transferred electronically to repay their short-term loan. *See* 32 C.F.R. § 232.8(e)(1). Green Dot Bank and SBTPG then establish a temporary deposit account to facilitate the deposit of the tax refund "after the extension of credit." *See* 32 C.F.R. § 232.8(e)(3). Borrowers grant FCB a "security interest" solely in the portion of the refund used to repay the Loan, which is also expressly permitted under the relevant regulation. *See* 32 C.F.R. § 232.8(e)(3).[6]

Bostick's argument that the regulatory safe harbors permitting account access do not apply because the Loan does not "comply with applicable law" fails for several reasons. First, as discussed above and in Intuit's Reply, Plaintiff has not plausibly alleged that his MAPR exceeded 36% or that the repayment of the Loan violates 32 C.F.R. § 232.8(e). Second, Bostick does not allege that ***FCB*** established or accessed the account at issue. Instead, the Complaint alleges that it is Green Dot Bank and SBTPG that establish or access the account. Compl. ¶¶ 96–98. Because FCB is not a party to either of those Defendants' agreements with Bostick, and because FCB is never alleged to have accessed the account at issue, FCB cannot be liable for any alleged improper access under 10 U.S.C. § 987(e)(5). *See Lucero v. Countrywide Bank N.A.*, No. 09-cv-01742 BTM (BLM), 2010 WL 1880649, at *3 (S.D. Cal. May 10, 2010) (motion to dismiss TILA claim granted where complaint lacked "factual allegations that [defendant] was involved in the [at issue] process…"). Bostick's remaining arguments do little more than restate Count II, as discussed above. As a result, Bostick has not

[6] The DoD, which promulgates the MLA's implementing regulations, has confirmed that the regulations "do[] not prohibit covered borrowers from granting a security interest to a creditor in the covered borrower's checking, savings, or other financial account, provided that it is not otherwise prohibited by other applicable law and the creditor complies with all other provisions of the MLA regulation, including the limitation on the MAPR to 36 percent." Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 82 FR 58739-01, 2017 WL 6368550, at *58740 (Dec. 14, 2017).

plausibly alleged a violation of Section 987(e)(5), and Count I must be dismissed.

**D. Count III Fails Because The Loan Agreement Expressly Excludes MLA-Covered Borrowers From Arbitration.**

Bostick concedes that the Loan Agreement states (on the first page, in bold, ALL-CAPS font) that "THIS AGREEMENT INCLUDES AN ARBITRATION PROVISION WITH A CLASS ACTION WAIVER (UNLESS YOU ARE A COVERED BORROWER UNDER THE MILITARY LENDING ACT). PLEASE READ IT CAREFULLY." FCB Loan Agreement at 1; Opp. at 43. Bostick is a "covered borrower" and so this arbitration provision does not apply to him. Plaintiff pleads no contractual ambiguity and makes no allegation that FCB attempted to enforce the provision. The express disclaimer thus forecloses a claim that FCB required Bostick, as a covered borrower, to submit to arbitration in connection with the Loan.[7]

Bostick's assertion that FCB's disclaimer is ineffective because the disclaimer appears in a separate section of the Loan Agreement and not the section that contains state-specific provisions, and thus "[a] reasonable covered borrower reading [the relevant] Section [] could conclude he had agreed to arbitrate," strains credulity. The ALL-CAPS disclaimer on the first page of the Loan plainly states that MLA borrowers are excluded from arbitration. Both parties to the contract agreed to it. Bostick's preferred reading apparently would require FCB to repeat the disclaimer throughout the Loan Agreement to give it effect—a reading of contract law that runs afoul of applicable precedent. *See Antar*, 2024 WL 1684895, at *4 (goal of contract interpretation is to "give effect to the mutual intention of the parties") (internal quotation marks and citation omitted). As noted in Intuit's Reply, Plaintiff fails to address *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 (11th Cir. 2000), or *Tamplenizza v. Josephthal &*

[7] The DoD confirmed that creditors may use a "savings clause" like the one used by FCB here to exclude covered borrowers from prohibited arbitration or other terms that would otherwise apply to non-covered borrowers. *See* Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 81 FR 58840-01, 2016 WL 4474980, at *58844 (Aug. 26, 2016).

*Co.*, 32 F.Supp.2d 702, 704 (S.D.N.Y. 1999), which hold that a plaintiff may not challenge the enforceability of an arbitration provision that has never been enforced against him. This is the precise situation the Court is faced with now.

Bostick's remaining arguments invoking the arbitration provision of another Defendant do not apply to FCB. Bostick cannot rely on "independent" (*see* Opp. at 3, 42) arbitration provisions in his separate agreements with third parties that are not subject to the MLA to state an MLA claim against FCB, especially where his Complaint is devoid of any allegation that FCB imposed those other parties' agreements as a term of its own Loan Agreement or is entitled to enforce those other agreements. Accordingly, the arbitration provision does not apply to Bostick, and his Count III should therefore be dismissed.

### E. <u>Leave to Amend Should Be Denied As Amendment Would Be Futile.</u>

Plaintiff's request for leave to amend, Opp. at 50, should be denied as futile. As to FCB specifically, the defects identified above are not of the sort that additional factual detail could cure. No amendment can transform a contract (like the Loan Agreement) that discloses "$0.00 in fees, charges, or points" and a single-payment repayment structure into consumer credit with a finance charge that violates the MLA. *See Zamora v. Solar*, Case No. 2:16-cv-01260-ODW-KS, 2016 WL 3512439, at *5 (C.D. Cal. June 27, 2016) ("A denial of leave to amend is proper on a breach of contract claim where amendment would be futile ***because the terms of the contract, which are not subject to change, preclude plaintiff's claim***") (emphasis added).

## III. <u>CONCLUSION.</u>

For the foregoing reasons, Defendant First Century Bank, N.A. respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated: August 31, 2026

**K&L GATES LLP**

By: */s/ Jacob R. Winningham*
Jacob R. Winningham
Kevin S. Asfour

Attorneys for Defendant
FIRST CENTURY BANK, N.A.