**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZACHARY BOSTICK, individually and on behalf of himself and all others similarly situated,<br>Plaintiff,<br>v.<br>INTUIT, INC. d/b/a TURBOTAX, INTUIT TT OFFERINGS, INC., CK PROGRESS, INC. d/b/a CREDIT KARMA LLC, MVB BANK, INC., FIRST CENTURY BANK, N.A., SANTA BARBARA TAX PRODUCTS GROUP, LLC, and GREEN DOT BANK,<br>Defendants. | Case No.: 3:26-cv-01444-H-VET<br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND**<br>[Doc. Nos. 31, 32, 33, 35.] |

On May 15, 2026, Defendants Intuit, Inc. and Intuit TT Offerings, Inc. ("TurboTax"), CK Progress, Inc. ("Credit Karma"), First Century Bank, N.A. ("FCB"), Green Dot Bank ("Green Dot"), Santa Barbara Tax Products Group, LLC ("SBTPG"), and MVB Bank, Inc. ("MVB") (collectively, "Defendants") filed four separate motions to dismiss Plaintiff Zachary Bostick's complaint. (Doc. Nos. 31, 32, 33, 35.) On July 27, 2026, Plaintiff filed a response in opposition to Defendants' four motions to dismiss. (Doc. No. 52.) On August 31, 2026, Defendants filed their replies. (Doc. Nos. 57, 58, 59, 60.) On September 9, 2026, the Court took the matter under submission. (Doc. No. 61.) For the reasons below, the Court grants Defendants' motions to dismiss with leave to amend.

/ / /

## Background

The following factual background is taken from the allegations in Plaintiff's complaint.

Plaintiff is the dependent spouse of an active-duty service member and a resident of San Diego, California. (Doc. No. 1, Compl. ¶ 29.) Plaintiff is a "Covered Borrower" as defined by the Military Lending Act ("MLA"). (Id.) Defendant Intuit, Inc. (d/b/a "TurboTax") is a California corporation with headquarters and its principal place of business in California. (Id. ¶¶ 30, 31.) Defendant Intuit Financial and Intuit TT Offerings, Inc. are subsidiaries of Intuit, Inc. with headquarters in Mountain View, California. (Id. ¶ 33.) Defendant CK Progress Inc. (d/b/a "Credit Karma") has headquarters in Oakland, California. (Id. ¶ 35.) Defendant MVB Bank, Inc. ("MVB") has headquarters in Fairmont, West Virginia. (Id. ¶ 36.) Defendant First Century Bank, N.A. ("FCB") has headquarters in Commerce, Georgia. (Id. ¶ 37.) Defendant Green Dot Bank ("Green Dot") has headquarters in Austin, Texas. (Id. ¶ 38.) Defendant Santa Barbara Tax Products Group, LLC ("SBTPG") is a division of Green Dot Corporation. (Id. ¶ 38.)

Around the 2024 tax filing season, Plaintiff used the TurboTax platform to prepare and electronically file his federal income tax return. (Id. ¶ 88.) In connection with filing his return, Plaintiff was offered the option to obtain a TurboTax Refund Advance Loan (the "Refund Advance Loan"), marketed as a short-term advance on his anticipated federal tax refund. (Id. ¶ 89.) The Refund Advance Loan was structured to be repaid automatically through interception of Plaintiff's federal tax refund. (Id. ¶ 95.) Plaintiff applied for and obtained a Refund Advance Loan originated by FCB. (Id. ¶ 90.)

As a condition of receiving a Refund Advance Loan, Plaintiff applied for and was approved for a Credit Karma Money Spend checking account provided by MVB. (Id. ¶¶ 91, 92, 94.) Upon approval, the Refund Advance Loan proceeds were disbursed into Plaintiff's Credit Karma Money Spend Account. (Id. ¶ 93.) As a condition of receiving a Refund Advance Loan, Plaintiff was also required to authorize Green Dot to establish a temporary deposit account for the purpose of receiving his federal tax refund (the "Green

Dot Deposit Account") and authorize SBTPG to deduct from the Green Dot Deposit Account the amount of the Refund Advance Loan, TurboTax-related fees, and other charges. (Id. ¶¶ 96, 97, 98.) The refund-processing agreement governing Plaintiff's transaction provides for transaction-based fees, including a $30.00 "Return Item Fee" and a $30.00 "Account Research and Processing Fee," which may be deducted from the Green Dot Deposit Account and retained by SBTPG. (Id. ¶ 99.) Plaintiff's Refund Advance Loan Agreement and refund-processing agreement both contain mandatory arbitration provisions and class action waivers. (Id. ¶¶ 102-104.)

Plaintiff alleges Defendants' standardized Refund Advance lending structure—requiring Plaintiff to open mandatory accounts, route refunds through temporary deposit accounts, authorize automatic repayment deductions, and waive judicial remedies—violates the Military Lending Act. (Id. ¶ 107.) In particular, Plaintiff's complaint alleges claims for: (1) unlawful account access and refund interception in violation of the Military Lending Act 10 U.S.C. § 987, et seq.; (2) excessive military annual percentage rate in violation of the Military Lending Act 10 U.S.C. § 987, et seq.; and (3) unlawful arbitration and waiver in violation of the Military Lending Act 10 U.S.C. § 987, et seq. (Id. ¶¶ 129-176.)

By the present motions, Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 8 for improper pleading, 12(b)(1) for lack of standing, and 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. Nos. 31, 32, 33-1, 35.) Defendant MVB also moves to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(3) for improper venue. (Doc. No. 35 at 12-18.)

## Discussion

## I. Legal Standards

### A. Rule 8

Federal Rule of Civil Procedure 8 requires every "pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996). Instead, "[t]he Supreme Court's decision in Ashcroft v. Iqbal supplies the guidelines for applying Rule 8[.]" Gibson v. City of Portland, 165 F.4th 1265, 1287 (9th Cir. 2026). Under Iqbal, "the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The goal [of Rule 8] is to provide sufficient notice so the parties and the court can focus litigation on the merits of a claim." Gibson, 165 F.4th at 1287 (internal quotation marks omitted).

**B. 12(b)(2) Lack of Personal Jurisdiction**

Under Federal Rule of Civil Procedure 12(b)(2), a complaint may be dismissed for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." Dow Chemical Co. v. Calderon, 422 F.3d 827, 830 (9th Cir. 2005) (quoting Chan v. Society Expeditions, 39 F.3d 1398, 1404-05 (9th Cir. 1994)). California's long-arm statute states that a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." Cal. Civ. Proc. Code § 410.10. Thus, California's long-arm statute permits courts to exercise personal jurisdiction within the limits of due process. Daimler AG v. Bauman, 571 U.S. 117, 125 (2014).

Under the Fourteenth Amendment's Due Process Clause, courts may exercise personal jurisdiction over any defendant who has sufficient "minimum contacts" with the forum that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). There are two bases for exercising personal jurisdiction over a non-resident defendant: (1)

"general jurisdiction," which arises where defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's contacts with the forum give rise to the claim in question. See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414–16, (1984).

"With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." Daimler AG, 571 U.S. at 137 (internal quotations omitted). Courts are limited to exercising general jurisdiction in forums where the corporation has continuous and systemic contacts, such that it is essentially at home. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

For specific jurisdiction, the Ninth Circuit uses a three-part test to determine if a defendant's contacts with the forum state are sufficient. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). Under that test: "(1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008); see also Myers v. Bennett Law Offices, 238 F.3d 1068, 1072 (9th Cir. 2001); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).

The plaintiff bears the burden of establishing personal jurisdiction. Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014); Boschetto, 539 F.3d at 1015 ("In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper"). "[T]he plaintiff need only make a prima facie showing of jurisdictional facts." Glob. Commodities Trading Grp. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101, 1106 (9th Cir. 2020) (citations omitted).

To make a "prima facie showing," the plaintiff needs to show facts that, if true, would support jurisdiction over the defendant. Lindora, LLC v. Isagenix Int'l, LLC, 198 F. Supp. 3d 1127, 1135 (S.D. Cal. 2016). To determine if a plaintiff met his burden, "uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588-89 (9th Cir. 1996) (quoting WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)).

**C. 12(b)(3) Improper Venue**

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to move to dismiss a complaint for improper venue. Plaintiff bears the burden of demonstrating venue is proper. See Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979). In considering a motion to dismiss under Rule 12(b)(3), a court need not accept the allegations in the pleadings as true and may consider facts outside the pleadings. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).

Venue is generally governed by 28 U.S.C. § 1391. Under subsection (b), venue exists in: (1) a judicial district in which any defendant resides if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) any judicial district in which any defendant is subject to the Court's personal jurisdiction if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

**D. 12(b)(6) Failure to State a Claim**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal conclusions" as true. Iqbal, 556 U.S. at 678. "Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

A court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). If the court dismisses a complaint for failure to state a

claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010). Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

## II. Analysis

### A. Plaintiff's Complaint Constitutes "Shotgun Pleading"

Defendants' motions to dismiss collectively raise a "shotgun pleading" argument, claiming the Complaint impermissibly "lumps" Defendants together. (Doc. No. 31 at 8, 18; Doc. No. 32 at 7, 12; Doc. No. 33-1 at 10; Doc. No. 35 at 10.) Plaintiff rebuts that the Complaint identifies, Defendant by Defendant, the specific role each entity played in a single integrated transaction. (See generally Doc. No. 1, Compl.; see also Doc. No. 52 at 21, 22.) Plaintiff asserts its role-specific pleading gives each Defendant fair notice of what it is alleged to have done, which is all Rule 8 requires. (Id.)

A "shotgun pleading" is one that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." Gibson, 165 F.4th at 1287-88 (citing 5A Wright & Miller's Federal Practice and Procedure § 1326 (4th ed. 2024)). There are four main types of shotgun pleadings: "(1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. (citing 35A C.J.S. Fed. Civ. Proc. § 310 (2025) and 61A Am. Jur. 2d Pleading § 159 (2025)). Rule 8 requires every "pleading that states a claim for relief [to] contain" three things: "a short and plain statement of the grounds for the court's

jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)-(3). Shotgun pleading undermines a fundamental purpose of Rule 8, which is to provide defendants with adequate notice of the plaintiff's claims, including the facts and the legal basis for relief. Gibson, 165 F.4th at 1290. District courts do not have to accept shotgun pleadings. Id. "It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts." Id. Whether the parties have raised the issue or not, the district court has "inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) and Rule 10(b)." Id. (quoting Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015)); see Dietz v. Bouldin, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."); Spurlock v. F.B.I., 69 F.3d 1010, 1016 (9th Cir. 1995) (stating that a district court has "inherent power over the administration of its business [and] inherent authority to ... enforce rules for the management of litigation" (citations omitted)).

The pleading held to be in violation of Rule 8 in Gibson is similar to the pleading presented here. In Gibson, the complaint violated Rule 8 because it set forth hundreds of factual allegations but, in their causes of action, referred only to "defendants" collectively while asserting multiple violations against numerous defendants. Gibson, 165 F.4th at 1291–95. The complaint incorporated earlier allegations wholesale into each claim and failed to identify which defendant committed which specific acts or which actions corresponded to which particular violations. Id. As a result, the pleading did not provide the defendants with fair notice of the claims against them and forced both the defendants and the court to decipher the alleged factual basis for liability. See id. at 1290, 1291–95.

The pleading and allegations here are of the same character. Plaintiff refers only to "defendants" collectively in his causes of action. (See Doc. No. 1, Compl. ¶¶ 134-137, 142-144, 152-155, 160-161, 169-174.) He does not specify what each Defendant did to violate the MLA; rather, he relies on vague statements. (Id.) For example, Plaintiff alleges Defendants' "refund-routing and Processing Bank deduction structure constitute[] an impermissible repayment condition prohibited by the MLA and its implementing regulations." (Id. ¶ 142.) However, it is unclear which Defendant committed which specific acts or which actions corresponded to particular violations. The nature of these allegations obscure each Defendants' conduct underlying the claims and leave Defendants guessing about the nature of the alleged wrongdoing. (See Doc. No. 31 at 28, 30 n.3; Doc. No. 32 at 15, 17; see generally Doc. No. 35.) The Complaint also incorporates over 100 paragraphs of prior allegations wholesale into each claim. (Doc. No. 1, Compl. ¶¶ 129, 142-144, 147, 158, 160-161, 164, 171-174.) As the Complaint is written now, the pleading does not provide Defendants with fair notice of the claims against them and forces both Defendants and the Court to decipher the alleged factual basis for liability.

Accordingly, the Court grants Defendants' motion to dismiss for failure to comply with Rule 8 with leave to amend. See Gibson, 165 F.4th at 1290 ("[W]hen district courts identify shotgun pleadings, they should not hesitate to afford such parties one last opportunity to make themselves understood."). The Complaint's failure to comply with Rule 8 is itself a sufficient basis for dismissal. See Renne, 84 F.3d at 1179 ("The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit."). Nevertheless, because Defendants also challenge the sufficiency of Plaintiff's claims on other grounds, the Court exercises its discretion in addressing certain of those arguments in the alternative below.

**B. The Court Lacks Personal Jurisdiction Over Defendant MVB**

Plaintiff fails to establish that the Court has specific jurisdiction over Defendant MVB. The Ninth Circuit applies the purposeful direction test. See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) ("We have

typically treated "purposeful availment" somewhat differently in tort and contract cases. In tort cases, we typically inquire whether a defendant "purposefully direct[s] his activities" at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt .... By contrast, in contract cases, we typically inquire whether a defendant "purposefully avails itself of the privilege of conducting activities" or "consummate[s][a] transaction" in the forum …"). The purposeful direction test requires a plaintiff to show that the defendant has "(1) committed an intentional act, (2), expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 803 (9th Cir. 2004). To satisfy the test, courts look at whether the forum state was the "focal point both of the [defendant's action] and of the harm suffered." Axiom Foods, Inc. v. Acerchem International, Inc., 874 F.3d 1064, 1070–71 (9th Cir. 2017); see also Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir. 2006) (the determinative question is whether a defendant's conduct was "expressly aimed at California").

Defendant MVB argues that the allegations in the Complaint are insufficient to convey specific jurisdiction in California over MVB as the Complaint relies on collective allegations about Defendants generally rather than specifying any individual jurisdictional basis against MVB specifically. (Doc. No. 35 at 12-17.) Plaintiff rebuts that the Complaint makes allegations about MVB being responsible for the funding and operation of the Credit Karma Money Spend checking account that borrowers "must open as a condition of obtaining" the Refund Advance Loan. (Doc. No. 1, Compl. ¶¶ 36, 58, 76, 91, 92, 94, 156.) Specifically, MVB's Credit Karma Money Spend Account is the vehicle by which the "originating lender," FCB, directly disburses the proceeds of the Refund Advance Loan to the account holder. (Id. at ¶¶ 37, 59, 93.) The Court agrees with MVB.

Plaintiff's allegations fail to show conduct from MVB directly targeting the forum state. Notably, Plaintiff's complaint does not allege that MVB conducted regular business in California, contacted or interacted with him as an intermediary, installed software on his devices, tracked his activities in California, or otherwise performed analogous actions.

(Doc. No. 59 at 5; see generally Doc. No. 1, Compl.) Rather, Plaintiff alleges only that MVB "provided" Plaintiff with a "checking account." (Id. ¶¶ 91, 93.) But, Plaintiff fails to include a single allegation detailing how Defendant's "checking account" targets Californians. Furthermore, Plaintiff does not even allege that the checking account is located in California. (See id. generally.) Plaintiff has therefore fallen short of his requirement to establish that specific jurisdiction is proper here.

Additionally, Defendant contends that Plaintiff does not, and cannot, allege any facts that her claims "arise out of" or relate to Defendant's conduct in California. (Doc. No. 35 at 16.) Specifically, Defendant asserts that Plaintiff's claims arise out of lending that unaffiliated third parties conducted, rather than actions by MVB, which merely provided a checking account. (Id.) In response, Plaintiff reiterates that because Defendant was a prerequisite to moving through the Refund Advance Loan process and was the vehicle used to deliver the loan to a California-based customer, then Plaintiff's claims "directly relate to MVB's conduct in connection with a California-based transaction." (Doc. No. 52 at 60, 61.) "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 582 U.S. 255, 255 (2017). Plaintiff's conclusory allegations fail to show any connection between Defendant's forum-related contacts and the harm he allegedly suffered. Accordingly, Plaintiff has insufficiently alleged that her claims arise out of or relate to Defendant's forum specific conduct. Schwarzenegger, 374 F.3d at 802.

Thus, the Court does not have specific jurisdiction over Defendant MVB and dismisses Plaintiff's claims against Defendant MVB for lack of personal jurisdiction. See Yih v. Taiwan Semiconductor Manufacturing Co., Ltd., 857 Fed.Appx. 318, 319 (9th Cir. 2021). The Court is not aware of any viable claim against MVB and concludes that, if Plaintiff had a viable claim, he would need to litigate it in West Virginia.[1]

[1] Because the Court grants Defendant MVB's motion to dismiss for lack of personal jurisdiction, the Court will not address Defendant MVB's Rule 12(b)(3) argument at length. The Court concludes, however, that, if Plaintiff has a viable claim against MVB, the forum-selection clause in the parties' agreement controls and designates West Virginia as the proper forum. (Doc. No. 35 at 7.); see Skyline

**C. Defendants TurboTax, Credit Karma, MVB, and SBTPG are not "Creditors" as Defined Under the MLA**

Defendants TurboTax, Credit Karma, MVB, Green Dot, and SBTPG maintain that the Complaint should be dismissed, as they are not considered "creditors" subject to the MLA. (Doc. No. 31 at 12, 17, 19; Doc. No. 33-1 at 5, 6, 8; Doc. No. 35 at 7, 10-11.) Plaintiff contends all Defendants are "creditors" or "assignee[s] of" the lender since the Refund Advance Loan "does not exist as a product independent of" Defendants. (Doc. No. 52 at 32, 36.)

The MLA applies only to "creditor[s]." 10 U.S.C. § 987(i)(5). The MLA's implementing regulations define a "creditor" as a person "[e]ngaged in the business of extending consumer credit" or "[a]n assignee of" such a person "with respect to any consumer credit extended." 32 C.F.R. § 232.3(i); accord 10 U.S.C. § 987(i)(5). For the purposes of this definition, a person or entity is "engaged in the business of extending consumer credit" if, together with its affiliates, it meets the Regulation Z transaction standard for a "creditor" as to covered borrowers. 32 C.F.R. § 232.3(i)(3). Regulation Z defines "creditor" to mean a person who (1) "regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment)," and (2) "to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract." 12 C.F.R. § 1026.2(a)(17)(i).

TurboTax asserts the MLA is not applicable as TurboTax does not loan money or process refund payments in connection with the Refund Advance Loan. (Doc. No. 31 at 17.) Instead, TurboTax "makes the [Refund Advance Loan] offered by the lending bank available on its tax-preparation platform so customers can decide if they are interested in it." (Id. at 12.) Similarly, Credit Karma does not loan money or process refund payments;

---

Aviation Consulting, LLC v. Air Peace, Ltd., No. 3:17-cv-00662, 2017 WL 4340381, at *1 (S.D. Cal. Sept. 29, 2017) (quoting Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996) (holding forum selection clauses as presumptively valid).

rather, Credit Karma merely provides the branding on the MVB deposit account. (Id. at 12.) Plaintiff rebuts that TurboTax "market[s] and facilitate[s]" the Refund Advance Loan through its platform, and a borrower cannot "apply for, obtain, or receive the Loan except by first using TurboTax to prepare her tax return, and then agreeing to use co Defendant products or services." (Doc. No. 52 at 32; Doc. No. 1, Compl. ¶¶ 3, 56–57, 88–91.) Plaintiff further asserts that Credit Karma is "no mere bystander to the disbursement," as the Refund Advance Loan proceeds are "disbursed into that Credit Karma-branded account rather than delivered to Plaintiff directly." (Doc. No. 52 at 32, 33; Doc. No. 1, Compl. ¶¶ 93–94.)

Similar to TurboTax and Credit Karma, MVB claims it is not a "creditor" as it only provided the debit checking account to receive the Refund Advance Loan proceeds and issued a Credit Karma-branded debit card to Plaintiff. (Doc. No. 35 at 10.) MVB notes that the Complaint does not allege that MVB provided any right to defer payment or that Plaintiff owes any debt to MVB at all. (Id.) Plaintiff alleges a "materially different arrangement," where MVB's approval was "a gating condition" to Plaintiff obtaining the Refund Advance Loan from FCB. (Doc. No. 52 at 36; Doc. No. 1, Compl. ¶¶ 58, 59, 91-93.)

Lastly, Green Dot and SBTPG assert that neither entity incurred debt, deferred payment, or became an assignee of the entity that did to be considered a "creditor" under the MLA. (Doc. No. 33-1 at 8.) Green Dot and SBTPG claim that Plaintiff's allegations against them concern only the "receipt, deduction, and disbursement of tax-refund proceeds after the Loan had already been originated—i.e., after the consumer credit had already been extended", none of which makes them creditors. (Id. at 9.) Plaintiff counters that Green Dot and SBTPG's role went "far beyond passive custody" despite their roles beginning after disbursement. (Doc. No. 52 at 38.) According to the Complaint, Green Dot designed and controlled "the only mechanism that collects the [Refund Advance] Loan," (Id.; Doc. No. 1, Compl. ¶ 96), and SBTPG had the authority to "deduct from this temporary deposit account" the amount of the Refund Advance Loan and "TurboTax-related fees and other

charges". (Id. ¶¶ 97–99.) If not "creditors," Plaintiff alleges Green Dot and SBTPG are at least "assignees" under the MLA due to their role in intercepting and controlling the loan's repayment source. (Doc. No. 52 at 38, 39.)

Even if the Court takes Plaintiff's allegations as true, none of the alleged actions by TurboTax, Credit Karma, MVB, Green Dot, or SBTPG are sufficient to make them creditors or assignees under the MLA. Under TILA and the MLA, a creditor is statutorily limited to lenders that make loans and to which payment is initially payable. 15 U.S.C. § 1602(g); 12 C.F.R. § 1026.2(a)(17)(i). Courts have repeatedly held that a party is not a creditor if it was not the originating lender or did not loan money to the plaintiff. See, e.g., Heinnickel v. Network Capital Funding Corp., No. 5:25-CV-00174-PCP, 2026 WL 2138560, at *2 (N.D. Cal. July 24, 2026) (holding loan purchaser was not a "creditor" under TILA because it was not the originating lender); Vissuet v. Indymac Mortg. Servs., No. 09-CV-2321-IEG (CAB), 2010 WL 2612153, at *3 (S.D. Cal. June 29, 2010) ("Plaintiff's claim fails because [defendant] was not involved in the origination of Plaintiff's loan."); Vincent v. The Money Store, 736 F.3d 88, 106 (2d Cir. 2013) (holding that although all notes were eventually assigned to The Money Store, because "the initial lenders on the loans were entities other than The Money Store," The Money Store was not a creditor under TILA).

Here, the Complaint alleges the Refund Advance Loan is made by FCB, the originating lender that underwrites and disburses the loan. (Doc. No. 1, Compl. ¶¶ 37, 57 90, 155.) The Complaint does not allege that FCB assigned the Refund Advance Loan to another Defendant. (See generally Doc. No. 1, Compl.) Plaintiff's collective allegations against Defendants cannot override his specific allegations identifying FCB as the originating lender. Plaintiff does not plausibly allege that TurboTax, Credit Karma, MVB, Green Dot, or SBTPG satisfy the requirements set forth by the MLA, because Plaintiff does not allege any facts showing that they "regularly extend[] consumer credit," that the Refund Advance Loan is "initially payable" to them, or that FCB assigned the Refund Advance Loan to them. See 32 C.F.R. § 232.3(i); 15 U.S.C. § 1602(g); 12 C.F.R. § 1026.2(a)(17)(i).

Because Plaintiff fails to plausibly allege that TurboTax, Credit Karma, MVB, Green Dot, and SBTPG are "creditors" or "assignees" under the MLA, the MLA does not apply and Plaintiff's MLA claims against them fail as a matter of law. Accordingly, the Court grants Defendant TurboTax, Credit Karma, MVB, Green Dot, and SBTPG's motions to dismiss on the grounds that they are not "creditors" under the MLA and the MLA, therefore, does not apply.

## Conclusion

For the reasons above, the Court grants Defendants' motions to dismiss, and the Court dismisses Plaintiff's Complaint.[2] The Court grants Plaintiff leave to amend as to any issue that Plaintiff contends can be cured by amendment.[3] Plaintiff must file its amended complaint within thirty (30) days from the date this order is filed if it can do so.

**IT IS SO ORDERED.**

DATED: September 11, 2026

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

[2] Because the Court grants Defendants' Motion to Dismiss, the Court will not address Plaintiff's request for judicial notice. The Court does not rely on the requested documents in reaching its conclusion and denies as moot the requests.

[3] As to Defendant MVB, the Court concludes that any attempt by Plaintiff to amend must be brought in the appropriate district of West Virginia.